Richard HEWITT, Kenneth A. Higgins, Jr., Robert Pringle, Samuel L. Jones, Tom A. Drake, Brian Behm, Burton Beilfuss, Joseph G. Hodor, Gregory Hinton and James C. Pipitone, Plaintiffs,

v. .

JOYCE BEVERAGES OF WISCONSIN, INC., a Delaware corporation; and Joyce Beverages of Illinois, Inc., a Delaware corporation, Defendants.

No. 81 C 2005.

United States District Court, N.D. Illinois, E.D.

Oct. 27, 1982. .

John G. Jacobs, Chicago, Ill., for plaintiffs.

Sheldon Davidson, Pedersen & Houpt, Chicago, Ill., William J. Collier, Jr., Joyce Beverages, Inc., New Rochelle, N.Y., Paul E. Slater, Sperling, Slater & Spitz, Chicago, Ill., for defendants.

MEMORANDUM OF DECISION
AND ORDER

NORDBERG, District Judge.

Plaintiffs brought this class action against defendants Joyce Beverages of Wisconsin ("Joyce Wisconsin") and Joyce Beverages of Illinois ("Joyce Illinois") alleging illegal resale price maintenance in violation of Section 1 of the Sherman Act, 15 U.S.C.

section 1.[1] This action is presently before the Court on defendants' motion to reconsider the granting of class certification,[2] or, in the alternative, to certify the class issue for interlocutory appeal pursuant to 28 U.S.C. section 1292(b). For the reasons set forth below, the Court now grants the defendants' motion for reconsideration and now decertifies that class.[3]

## FACTS

The defendants Joyce Wisconsin and Joyce Illinois are wholly-owned subsidiaries of Joyce Beverages, Inc. Both defendants are Delaware corporations in the business of manufacturing and distributing soft drinks. Joyce Wisconsin is licensed to do business in Illinois and Wisconsin. Notwithstanding its name, Joyce Wisconsin transacts a substantial volume of business in the northern counties of Illinois. Joyce Illinois covers the rest of Illinois, excluding the greater Chicago metropolitan area which is serviced by Joyce Beverages of Chicago, Inc. The respective territories of Joyce Wisconsin and Joyce Illinois do not overlap and therefore, the two defendants are not in competition with each other.

The plaintiff class consists of present and past[4] distributors of Joyce Illinois and Joyce Wisconsin who are in fact deliverymen to transport the bottled soft drinks to retail establishments. These distributors are independent contractors, owning, maintaining and insuring their own trucks. The distributors work solely for the defendants, purchasing cases of soft drinks from the defendants and reselling them to retail businesses such as food stores, vending companies and restaurants.

The plaintiffs claim that defendants conspired together and either coerced the deliverymen or entered into an implied agreement to fix resale prices of their product. Plaintiffs charge further that these actions on the part of defendants violate section 1 of Sherman Act, 15 U.S.C. section 1. The allegations comprising plaintiffs' claim include: distributing resale price lists to the deliverymen, issuing price directives to defendants' sales managers who then relayed the directives to the deliverymen, distributing resale price lists to plaintiffs' customers, reviewing and modifying charge slips, accompanying the deliverymen distributors on their routes, visiting deliverymen's customers to check on the deliverymen's pricing practices, reminding deliverymen that they were being watched, and warning them that deviation from the resale prices established by defendants would not be tolerated.[5] There is no evidence, nor do plaintiffs allege, that any deliveryman distributor was ever terminated by defendants for their failure to abide by the "suggested" resale price lists.

## CLASS ACTION STANDARD

Plaintiffs' motion to certify the case at bar as a class action pursuant to Rule 23(b)(3), F.R.C.P. was granted on January 25, 1982. That order is now under reconsideration by the Court.

There are seven requirements for finding a Rule 23(b)(3) class. They are: (1) There must be a definable class; (2) The class representatives must be members of the class; (3) There must be sufficient numerosity as set forth in Rule 23(a)(1), F.R.C.P.; (4) There must be commonality among the

1. Jurisdiction is premised upon 28 U.S.C. sections 1331, 15 U.S.C. sections 1, 15, 22.

2. Prior to the transfer of the instant action to this Court, the class was certified on January 25, 1982. In reviewing the transcript of the oral argument on the class issue, it is clear that the prior judge believed it to be a close question. In transferring the case to this Court, he personally indicated that it might be wise "to take a fresh look at the whole question of class certification."

3. The Court also certifies the instant ruling for interlocutory appeal pursuant to 28 U.S.C. section 1292(b).

4. Plaintiffs allege that there are 135 current distributors and 212 past distributors in the putative class. These distributors apparently remain located in their respective territories.

5. Supplemental Memorandum Concerning Defendants' Motion To Reconsider Class Certification, Exhibit II, p. 5–6.

class members, meaning the existence of common questions of law or fact pursuant to Rule 23(a)(2), F.R.C.P.; (5) There must be typicality, meaning that the claims or defenses of the representative parties are typical of those of the class pursuant to Rule 23(a)(3), F.R.C.P.; (6) The representatives must fairly and adequately protect the interests of the class pursuant to Rule 23(a)(4), F.R.C.P.; (7) And the action must fit into the prerequisites set forth in Rule 23(b)(3), F.R.C.P. The prerequisites are: (A) that common questions of law or fact predominate over individual questions and (B) the class action format is a superior form of action to other available methods for fair and efficient adjudication of the controversy. *See generally,* 7 Wright & Miller, Federal Practice and Procedure sections 1761–1770.

Rule 23(b)(3) class actions have a limited function and must be utilized appropriately. "The basic concern must be that the use of the class action should alter the substantive legal relations between the parties as little as possible... Such an application of the rule is required by the grant of authority to the Supreme Court to promulgate these rules: 'such rules shall not abridge, enlarge or modify any substantive right.' 28 U.S.C. section 2072." 3B J. Moore Federal Practice paragraph 23.45 & n. 24.

In examining the use of the class action format in antitrust litigation, Moore's treatise goes on to state:

> The convenience and efficiency of a class action are often demonstrable in a suit brought on behalf of a large group claiming to have been injured by defendant's activities in restraint of trade, where liability depends on legal and factual issues uniformly relevant to all those allegedly named; if liability is found, the individual claims for damages can then be determined in subsequent separate proceedings.
>
> The propriety of class treatment becomes more doubtful, however, where the situa-

tion departs from this antitrust model. Where the product or the purchasers are not standardized, so that the defendant (or some individual defendants) may not have acted uniformly with respect to all class members, the basic question of market definition, conspiracy, or restraint may not be the same for all class members.

3B J. Moore Federal Practice paragraph 23.46 citing *Ungar v. Dunkin Donuts of America, Inc.,* 531 F.2d 1211 (3d Cir.1976); *Halverson v. Convenient Food Mart, Inc.,* 69 F.R.D. 331 (N.D.Ill.1974); *Thompson v. T.F.I. Companies, Inc.,* 64 F.R.D. 140 (N.D.Ill.1974).

In the instant case, defendant argues that common questions of law or fact do not predominate over individual questions within the meaning of Rule 23(b)(3), F.R.C.P. Therefore, defendants have filed the instant motion to reconsider the order certifying the plaintiff class in this action. Specifically, defendants charge that coercion of each individual distributor is a necessary element of plaintiffs' claim and that such coercion cannot be proven on a class-wide basis. Defendants also charge that fact of damage is a necessary element of plaintiffs' claim which must be proven as to each distributor and cannot be proven on a class-wide basis.[6]

Professors Areeda and Turner have noted that "(t)he damage issue turns out to be a major stumbling block for class actions. The evidence establishing damages usually varies from class member to class member. Although the Court has the power to limit the class action to the question of liability and to order separate trials to establish damages, complex damage questions may lead the Court to rule that common questions do not predominate." (Footnotes omitted) Areeda and Turner, Antitrust Law paragraph 332(c).

## VERTICAL RESALE PRICE MAINTENANCE

The legal precedents relating to vertical resale price maintenance are unclear at best

---

**6.** None of the representative plaintiffs named in the action are presently working for the defendants. It is clear the deliverymen distribu-tors currently employed by defendants would have differing interests from those named plaintiffs.

and contradictory at worst. The line delineating what activity amounts to a violation of Section 1 of the Sherman Act, 15 U.S.C. section 1,[7] is far from clear. In 1919, the Supreme Court laid the foundation of judicial analysis of the Sherman Act in what has become known as the *Colgate* Doctrine. In *United States v. Colgate,* 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919), the Court stated:

> The purpose of the Sherman Act is to prohibit monopolies, contracts and combinations which probably would unduly interfere with the free exercise of their rights by those engaged, or who wish to engage, in trade and commerce—in a word to preserve the right of freedom to trade. In the absence of any purpose to create or maintain a monopoly, the act does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal; and of course, he may announce the circumstances under which he will refuse to sell. 250 U.S. at 305, 39 S.Ct. at 468.

Professor Von Kalinowski states in his treatise on antitrust law that "a supplier is free to refuse to deal with any customers who refuse to adopt its resale pricing policy." Von Kalinowski, Antitrust Law and Trade Regulation section 67.01(1). He goes on to explain:

> To the extent that purchasers unilaterally opt to follow a resale pricing program, the supplier has effectively utilized the refusal to sell as a legal device for fixing prices. This technique, in effect, permits sellers to engage in price fixing, a practice which is ordinarily considered to be a per se violation of the antitrust laws. Nevertheless, the right to refuse to deal is not absolute; the practice will escape antitrust liability only if it satisfies the following conditions:
>
> (1) the refusal to sell is construed as truly unilateral action; and

(2) the refusal to sell is not accompanied by 'unfair' anticompetitive conduct by the seller.

Once collaborative or unfair conduct—for the end purpose of controlling resale prices—is established, the practice will be condemned.

Von Kalinowski, *supra* section 67.01(1).

In interpreting what amounts to more than a unilateral refusal to deal and thus an illegal price maintenance under the Sherman Act, the Courts have looked for some form of overt action by the seller to effect adherence to its pricing policy. *United States v. Parke, Davis & Co.,* 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); *Spray-Rite Service Corporation v. Monsanto Company,* 684 F.2d 1226 (7th Cir.1982); *United States v. Bausch & Lomb Co.,* 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024 (1944). Examples of such overt action which have been construed as violations of the Sherman Act include: (1) attempts to attain assurances that the seller's pricing policy will not be violated, *Girardi v. Gates Rubber Co. Sales Division,* 325 F.2d 196 (9th Cir.1963); (2) requests of third parties to assist in effectuating that policy, *Albrecht v. Herald Co.,* 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 *reh. den.* 390 U.S. 1018, 88 S.Ct. 1258, 20 L.Ed.2d 169 (1968); (3) the utilization of coercion, either direct or indirect, as a means of forcing customers to fall into line, *Simpson v. Union Oil Co.,* 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98, *reh. den.* 377 U.S. 949, 84 S.Ct. 1349, 12 L.Ed.2d 313 (1964).

The Supreme Court in *Parke-Davis, supra* held that once involuntary acquiescence, or a tacit agreement, is inferred from a course of action, the requisite collaborative element for antitrust liability is also established. The *Parke-Davis* Court went on to indicate that if price fixing is the intended result of such a concerted refusal to deal, that concert of action is per se illegal under the Sherman Act. However, in the absence

---

**7.** 15 U.S.C. section 1 provides in pertinent part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal."

of an "agreement", there cannot be a violation of Section 1 of the Act.[8]

This case may be sufficiently different on the facts from many of the cases cited in this area, and therefore, requires a different antitrust analysis. The instant action does not deal with an attempt to impose resale prices on retailers. Here, in effect, is a bottler delivering its product by deliverymen working exclusively for the bottler. These deliverymen, labeled distributors by the parties, are independent contractors rather than employees of the bottler. No case with similar facts has been located as yet. It may be that the deliverymen do not fall within the class sought to be protected by the antitrust laws, or that a different analysis must be made as to whether there is in fact any anticompetitive effect caused by this method of product delivery and distribution. See *In Re Industrial Gas Antitrust Litigation, Bichan v. Chemtron Corp.,* 681 F.2d 514, 515 (7th Cir.1982).

■ It is unnecessary and improper for the Court to decide the merits of the instant action at this time. However, in light of the legal principles relating to the appropriateness of the class action format recited above, it is highly unlikely that the plaintiffs in the instant action could successfully establish an overt action on the part of the defendants amounting to an antitrust violation that could be proven on a class-wide basis. The plaintiffs seek to join present deliverymen distributors in the same class as past deliverymen distributors notwithstanding the fact that none of the named representatives of the putative class are presently working with defendants. Not only do the interests of present deliverymen distributors conflict with those of past deliverymen distributors, but even the experiences of past distributors with defendants

must vary greatly.[9] Therefore, the named plaintiffs do not adequately represent the class because their interests are not co-extensive with the purported class.[10] *Thompson v. T.F.I. Companies, Inc.,* 64 F.R.D. 140 (N.D.Ill.1974). The Supreme Court has indicated that courts are to adhere strictly to the standards of Rule 23, F.R.C.P. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The plaintiffs, who are past deliverymen, are apparently located in the same geographic area where the defendants do their business. Therefore, it appears there is no great difficulty in dealing with those who may wish to join in this action.

The plaintiffs have failed to allege a proper class under Rule 23(b)(3). Common questions of law or fact do not predominate over individual questions and the class action format is not a superior form of action to other available methods for fair and efficient adjudication of the controversy. The plaintiffs have failed to adequately allege the existence of injury. Even if some damage can be shown due to the alleged resale price maintenance, this damage would best be proven on an individual basis. Therefore, the instant case cannot proceed as a class action pursuant to Rule 23(b)(3), F.R.C.P. at the present time.

## CONCLUSION

Accordingly, defendants' motion for reconsideration of the order of January 25, 1982 granting class certification in this action is granted. That order is hereby reversed and class certification in this action is denied. An immediate appeal from this order may materially advance the ultimate termination of the litigation. Therefore, the Court certifies the instant ruling for

---

**8.** A jurisdictional requisite for a Sherman Act, Section 1 cause of action is a "contract, combination ... or conspiracy."

**9.** There has been no allegation of a uniform agreement in which the distributors were forced to adhere to the defendants' resale price policy. Therefore, any overt action that would exceed the bounds of the *Colgate* Doctrine would be individualized in nature and thus not

appropriately dealt with in the class action format.

**10.** The parties to this law suit are currently involved in other litigation before other courts regarding matters of collection with corresponding counterclaims. *See,* Areeda and Turner, Antitrust Law, paragraph 332.

interlocutory appeal pursuant to 28 U.S.C. section 1292(b).

IT IS SO ORDERED.