## Shaver v. Standard Oil Co.
*[Cite as 7 AOA 209]*

*Case No. H-89-58*
*Huron County, (6th)*
*Decided October 19, 1990*

*Dennis E. Murray, for Appellant.*

*Walter J. Rekstis, III, Frank A. DiPiero, William W. Owens, and Richard J. Goetsch, for Appellee.*

This is an appeal of a judgment of the Huron County Court of Common Pleas which overruled plaintiff-appellant Kenneth J. Shaver's request for certification of his cause as a class action pursuant to Civ. R. 23. From that judgment, appellant filed a timely notice of appeal. He asserts one assignment of error consisting of several subparts.

"A TRIAL COURT ABUSES ITS DISCRETION BY 'DISMISSING' CLASS ACTION ALLEGATIONS IN A COMPLAINT WHERE THE RECORD ESTABLISHES THAT:

"(1) THE RULING WAS MADE BY A JUDGE NOT ASSIGNED TO THE CASE;

"(2) THE JUDGE RULED *SUA SPONTE,* WITHOUT NOTICE TO THE PARTIES THAT HE WAS IN THE CASE AND THAT HE WOULD RULE ON THE CLASS CERTIFICATION ISSUE;

"(3) THE JUDGE NEVER MET WITH THE ATTORNEYS TO DISCUSS THE CASE OR THE CERTIFICATION ISSUE;

"(4) THE JUDGE STATED HE REVIEWED THE 'MEMORANDUMS' OPPOSING CLASS CERTIFICATION WHEN ONLY ON WAS FILED;

"(5) THE JUDGE STATED HE REVIEWED THE DEPOSITIONS WHEN ONLY ONE WAS FILED;

"(6) THE JUDGE DID NOT INDICATE THAT HE REVIEWED THE COMPLAINT OR PLAINTIFF'S MEMORANDUM SUPPORTING CERTIFICATION OR THE CASE LAW AUTHORITIES CITED THEREIN;

"(7) THE JUDGE RULED WITHOUT A HEARING, WHICH HAD PREVIOUSLY BEEN SCHEDULED, ON CLASS CERTIFICATION;

"(8) THE JUDGE IGNORED A PENDING MOTION TO COMPEL THE DISCOVERY OF EVIDENCE RELEVANT TO THE CERTIFICATION ISSUE AND FOR ADDITIONAL TIME WITHIN WHICH TO FILE SUCH EVIDENCE AND A SUPPLEMENTAL MEMORANDUM SUPPORTING CERTIFICATION;

"(9) THE JUDGE DISMISSED 'THE CAUSE OF ACTION WITH RESPECT TO CLASS CERTIFICATION' WHEN FOUR CAUSES OF ACTION, EACH CONTAINING CLASS CLAIMS, WERE PLAINLY ASSERTED; AND

"(10) THE JUDGE FAILED TO MAKE A SINGLE FINDING OF FACT OR CONCLUSION OF LAW OR TO ARTICULATE A SINGLE GROUND SUPPORTING HIS DECISION."

The procedural aspects of this case relevant to our disposition of appellant's assignment of error are as follows.

On October 13, 1981, appellant filed a complaint alleging that defendant-appellee, The Standard Oil Company ("Standard"), a corporation duly organized and operating under Ohio law, had engaged in conduct which violated Ohio's Valentine Act, R.C. Chapter 1331 and the Ohio Consumer Sales Practices Act, R.C. Chapter 1345. The complaint further asserted that Standard had breached its fiduciary duty and interfered with the business relationship between appellant and his retail customers. In short, appellant alleged that appellee had engaged in the restraint of trade and sought to force independent lessee gasoline dealers out of the market in order to obtain their business for itself. Appellant brought the action on behalf of himself and of a class consisting of "all present and former Ohio independent lessee gasoline dealers of Sohio."

The sole judge in the Huron County Court of Common Pleas, General Division, was, at that time, the Honorable Robert B. Smith.

On December 11, 1981, appellee filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted. Appellant filed a memorandum in opposition and appellee, a reply memorandum. On March 31, 1982, appellant filed his first amended complaint which rectified certain omissions or errors in the original complaint but which contained the same four causes of action and reasserted that the suit was being brought on

behalf of a class consisting of "all present and former Sohio independent lessee-dealers located in the state of Ohio."

On May 13, 1982, appellee filed a motion to dismiss the first amended complaint on the same ground as raised in its prior motion to dismiss. On June 19, 1986, Judge Smith, by journal entry, assigned this case to the Honorable Thomas E. Heydinger, the judge of the Huron County Court of Common Pleas, Probate/Juvenile Division. On September 23, 1986, after a pre-trial conference, Judge Heydinger ordered that the parties submit written arguments on the motion to dismiss and the issue of class certification by October 1, 1986. The trial court scheduled a hearing on the motion to dismiss for October 20, 1986 and a hearing on the question of class certification for November 5, 1986. On October 1, 1986, Standard filed a supplemental memorandum in support of its motion to dismiss and appellee filed a memorandum in opposition. On October 6, 1986, the trial court denied the motion to dismiss.

On October 29, 1986, appellant filed a motion for reconsideration of the denial of the motion to dismiss and a motion for a continuance of the November 5 hearing on certification. Appellant filed a memorandum in opposition.

On October 3, 1986, appellant's motion for a continuance of the hearing on class action certification was granted and hearing set for January 12, 1987; the motion for reconsideration was granted, in part, and a hearing on said motion scheduled for December 15, 1986. Appellee filed its answer to the first amended complaint and a counterclaim on November 4, 1986. The counterclaim alleged that appellant had failed to timely pay certain fees and charges as required by the licensing agreement and requested $768.70 in compensatory damages for breach of contract. Appellant filed his answer to the counterclaim on November 13, 1986.

On November 3, 1986, appellant filed his memorandum in support of class certification. Appellee filed its memorandum in opposition to class certification on January 6, 1987.

On January 7, 1987, Judge Heydinger vacated the judgment of October 6, 1986, *i.e.,* the denial of the motion to dismiss, and recused himself from the case. The record discloses no journal entry assigning any specific judge to this case after the recusal. On November 15, 1988, the Honorable Bruce C. Huffman filed a "decision" denying the motion to dismiss and ordering the parties to file supplemental briefs on the question of class certification by October 15, 1988. The "decision" further ordered the parties to prepare a judgment entry of the foregoing orders and submit it for the court's approval. The record does not contain such a judgment entry. Appellant's subsequent motion for an extension of time in which to file a supplemental memorandum and/or evidence in support of class certification was granted.

On November 10, 1988, appellant served appellee with interrogatories. By stipulation filed on December 19, 1988, the parties agreed to allow appellee until February 1, 1989, to respond to the interrogatories and to produce requested documents. The stipulation also provided that the parties could file supplemental materials relative to the certification issue until March 1, 1989. Nonetheless, no supplementary materials were ever filed.

On February 15, 1989, appellant filed a motion to compel discovery, arguing that appellee had failed to provide complete responses to Interrogatories Nos. 1-5 and 7. Appellant also moved the court for an extension of time in which to file a supplemental memorandum on class certification, that is, until thirty days after appellee's "complete" discovery response. Appellee filed a memorandum in response contending that appellant had failed to examine business records made available to him by appellee and that some of the information sought by appellant was, at this point in time, irrelevant. Judge Huffman never ruled on the motion to compel.

The next judgment entry, dated November 21, 1989, signed by the Honorable Phillip M. White, denied appellant's request for class certification. Notice of appeal of this denial was filed on December 18, 1989.

Although appellant sets forth several subparts in his single assignment of error, these alleged procedural errors can be grouped into three categories.

First, appellant asserts that Judge White did not have the authority to rule on the issue of class certification. Appellant claims that Judge Huffman was assigned to this case and absent a journal entry or other order transferring the case to Judge White, the latter did not have the authority to make any rulings.

Appellant argues that *Brown v. Brown* (1984), 15 Ohio App. 3d 45, and *Berger v. Berger* (1981), 3 Ohio App. 3d 125, are controlling in this case. The *Berger* court, relying on C.P. Sup.

R. 4, held that in a *multi-judge* general division of each court of common pleas a transfer of a case between judges must be journalized or the judge assuming the case has no authority and his rulings are voidable on timely objection by any party. *Berger, supra,* at 130. Both the *Brown* court and the *Berger* court held that the right to challenge the authority of the substituted judge could be waived upon failure to raise a timely objection. *Brown, supra; Berger, supra,* at 131.

In this case, the Huron County Court of Common Pleas, General Division, has *one* duly elected judge. R.C. 2301.02. Prior to his retirement, the Honorable Robert B. Smith was that judge. He, by journal entry, assigned Judge Heydinger to this case. After Judge Heydinger recused himself from the case, no specific judge was assigned to the case by journal entry, but Judge Huffman, a retired judge who we note is frequently temporarily assigned to sit in various common pleas courts, presided over the proceedings in this cause. In January 1989, Judge White took office as the only resident judge in the Huron County Court of Common Pleas, General Division. These facts distinguish this case from *Brown, supra,* and *Berger, supra,* and places it on all fours with *State, ex rel. Bd. of Edn., v. Coffman* (1965), 2 Ohio App. 2d 41. In *Coffman, supra,* at 44, the Fayette County Court of Appeals found that assignment by the Chief Justice of the Supreme Court of Ohio confers continuing, but not exclusive jurisdiction over a case which the assigned judge enters. That court concluded that in an instance where a single resident judge takes office, the assigned judge may relinquish his control of the case, and that the judge assuming office has jurisdiction over every pending case. *Id.* This is what has occurred in the case at bar. We, therefore, conclude that Judge White, as the sole resident judge of the Huron County Court of Common Pleas, General Division, had the authority to rule on the issue of class certification. Accordingly, appellant's assignment of error, subpart (1) is found not well-taken.

In his assignment of error, subparts (4), (5), (6), (9), and (10), appellant makes reference to several alleged deficiencies in the trial court's judgment entry. He contends that these "patent" errors in the judgment reveal that the court was unfamiliar with class actions and did not review the portions of the record necessary to the determination of the class certification question.

A judgment entry in a civil case is sufficient for the purposes of appellate review if it contains (1) the case caption and number; (2) a designation as a judgment entry, a decision or both; (3) a clear pronouncement of the court's judgment; (4) the judge's signature; (5) a file stamp indicating journalization; and (6) when applicable, a Civ. R. 54(B) determination and Civ. R. 54(B) language. See Civ. R. 58; *Brackmann Communications, Inc. v. Ritter* (1987), 38 Ohio App. 3d 107, 109. The judgment entry journalized by the trial court in this cause fulfills these requisites. The fact that the entry may also contain certain ministerial errors and does not recite each and every item of evidence reviewed in reaching its decision, does not affect either the validity of this judgment or indicate that Judge White was remiss in his duty to review all relevant documents in the record. While it is the better practice for a trial court, particularly in cases of class certification, to state the basis of its decision, the court is not required, as asserted by appellant, to list its findings in the judgment entry. See *Keiser v. Oakmont, Inc.* (May 11, 1984), Wood App. No. WD-83-86, unreported. Appellant's argument that *Warner v. Waste Management, Inc.* (1988), 36 Ohio St. 3d 91, implicitly overruled *Keiser, supra,* is not persuasive. Although *Warner, supra,* at paragraph one of the syllabus, holds that a court must make seven affirmative findings before a cause can be certified as a class action, it does not mandate that these findings be included in the lower court's judgment entry. Rather, the *Warner* court enunciated a particularized standard to be applied to the issue of class certification. Even though a clear and concise rationale for the trial court's determination. is preferred, it is, therefore, not an absolute requirement. Accordingly, appellant's assignment of error, subparts (4), (5), (6), (9), and (10) are found not well-taken.

In subparts (2), (3), (7), and (8) of his assignment of error, appellant challenges the procedure followed by the trial court in reaching its decision. Shaver claims that the trial court erred in ruling on the question of class certification *sua sponte* and without notice to the parties. Appellant argues that the trial court judge erred by failing to meet with the parties in order to familiarize himself with the case before he ruled upon the issue of class certification. Appellant also contends that the failure to hold a hearing on the class certification was error. Finally, appellant asserts that the lower court

erred by failing to rule on his pending motion to compel discovery of information relevant to the class certification prior to ruling on that question itself.

Civ. R. 23 is silent as to whether a hearing must be held on the issue of class certification. However, in *Warner, supra,* at 98, n. 9, the Supreme Court of Ohio recognized that an evidentiary hearing is not required in all cases. See, also, *Franks v. Kroger Co.* (C.A. 6, 1981), 649 F. 2d 1216, 1223 (interpreting F.R.C.P. 23 to not require an evidentiary hearing on class certification. An evidentiary hearing need not be held in cases where the pleadings in a class action are so clear that a trial court may find by a preponderance of the evidence that certification is or is not proper. *Warner, supra.* This court's position on the question of an evidentiary hearing was set forth in *Clark v. Pfizer, Inc.* (July 13, 1984), Sandusky App. No. S-84-7, unreported, as follows:

"*** as long as the trial court provides sufficient opportunity for a factual development so as to permit a meaningful determination as to whether or not a cause of action should be certified as a class action, the trial court need not conduct a hearing on the certification question. The certification question is left within the sound discretion of the court."

See, also, *Jones v. Hutto* (C.A.8, 1985), 763 F. 2d 979; *Limberios v. Vermilion River Resort* (June 17, 1990), Lorain App. Nos. 89CA004581 and 89CA004596, unreported; *Hitzler v. Doraty Chevrolet* (Sept. 9, 1983), Cuyahoga App. No. 46035, unreported. Cf. *Hanson v. Titan Tiger, Inc.* (Jan. 14, 1988), Cuyahoga App. No. 53250, unreported.

Thus, our focus in considering the lower court's failure to hold an evidentiary hearing or to take any other overt action[1] to familiarize itself with this case depends upon the development of the evidence, *i.e.,* operative facts, necessary to its determination of the certification question. It follows that if the court had sufficient information before it to rule upon said question, that it did not abuse its discretion by failing to rule upon appellant's motion to compel answers to his interrogatories. In determining whether the court's failure to hold an evidentiary hearing was error, we must, therefore, consider the merits of the denial of class certification.

A trial court judge has broad discretion in determining whether a case may be maintained as a class, action and that determination will not be disturbed absent an abuse of discretion. *Marks v. C.P. Chemical Co.* (1987), 31 Ohio St. 3d 200, 201. A finding of abuse of discretion, particularly if the trial court has denied certification, should be made cautiously. *Marks, supra,* at 201. Thus, our inquiry is limited to a determination of whether the denial of certification was arbitrary, unreasonable or unconscionable. *Id.*

The burden of establishing the right to a class action rests upon the plaintiff. *State, ex rel. Ogan, v. Teater* (1978), 54 Ohio St. 2d 235, 247; *Grubbs v. Rine* (1974), 39 Ohio Misc. 67. In order to be certified as a class action, a case must meet *seven* prerequisites, two of which are implicitly required by Civ. R. 23 and five others which are expressly set forth therein. *Warner, supra,* at paragraph one of the syllabus. Failure to satisfy any one of the prerequisites results in a denial of certification. *Id.,* at 94. The two implicit prerequisites are (1) that the class be identifiable and that the definition of the class must be unambiguous and (2) the class representative(s) must be a member or members of the class. Four of the explicit requirements are set forth in Civ. R. 23(A) and are (1) numerosity, *i.e.,* the case is so numerous that joinder of all members is impracticable; (2) commonality, *i.e.,* there are questions of law or fact common to the class; (3) typicality, *i.e.,* the claims or defenses of the representatives are typical of the claims or defenses of the class; and (4) the representatives will fairly and adequately protect the interest of the class. *Id.,* at 97. The analysis under this last prerequisite is divided into a consideration of the adequacy of the representative(s) and the adequacy of counsel. *Id.,* at 95. The final prerequisite is a determination of whether *one* of the Civ. R. 23(B) requirements is met. *Id.,* at 94. In the instant case, the following relevant facts were before the trial court.

It is undisputed that appellant was an independent lessee-dealer ("dealer") of Standard from November 7, 1966 to June 23, 1979. In his affidavit, appellant attested to the fact that he had operated a Standard sales and service station in Huron County from 1960 through 1979. Appellant stated that from 1966 through 1979 his business relationship with Standard was governed by a series of similar short term leases which conditioned the lease renewal on the purchase and sale of Standard motor fuel and Atlas tires, batteries and accessories

("TBA"). The two leases in the record of this case contain clauses relating to the use of the Standard trademark, purchase of Standard motor fuel and Atlas TBA, minimum gas volume purchases or sales required per lease period, and state that the failure to purchase or sell the minimum stated quantity shall be grounds for termination of the lease.[2] Deposition testimony of Robert G. Griffin, a former corporate vice-president of Standard, reveals that in 1972 sixty-one percent of the two thousand plus Standard stations in the state of Ohio were operated by dealers and that twenty-five percent of the total number of Standard stations in this state were operated by such dealers in the year 1979. Griffin testified that these dealers would lease the service station facilities from Sohio per a lease or licensing agreement, paying a monthly rental. Griffin testified that there were over 500 Standard stations in Ohio in 1980. Griffin also testified that lease negotiations were handled by field managers and could vary from dealer to dealer. He further stated that different versions of the preprinted or standardized portions of the leases were in effect at different times throughout the relevant time period. Although Griffin admitted that to his knowledge no dealer had ever sold or requested to sell other brands of motor fuel or TBA, he further stated that there was no express prohibition in the lease agreements precluding the sale of other brands.

In addition, documents submitted by appellant and the testimony of Griffin disclosed that Standard engaged in a divestiture plan during the 1970s which resulted in a dramatic decrease in the number of stations operated by dealers as compared to company controlled stations (from two-thirds down to one-fourth). However, the plan itself indicates that the decision to cease operation of certain stations depended upon several factors including volume, condition of the station, and the availability of a replacement location. Nevertheless, changes in the lease agreements from 1975 to 1978 disclose that increased minimum volumes of Standard gasoline were required to be purchased by dealers.

Clearly, from the record before us the trial court could readily find that the prerequisite of numerosity had been met with a class of over forty individuals. *Id.* In addition, this was an identifiable, *i.e.,* not ambiguous, class and the plaintiff Kenneth Shaver was a member or representative of the class.

As to commonality, courts generally require only a "common nucleus of operative facts" to fulfill this prerequisite. *Id.; Marks, supra,* at 202. Appellant alleged that Standard engaged in a common course of conduct toward all dealers and set forth legal issues, *e.g.,* breach of fiduciary duty, restraint of trade, tortious interference with business relationships, violations of the Consumer Sales Practices Act, common to the class. *Marks, supra,* at 202. Griffin testified that the preprinted portions of the leases did not vary and was unable to cite any instance where the terms of the agreements had varied. By providing standardized lease agreements which were uniformly imposed on the dealers by appellee, appellant met the threshold requirement of commonality. *Rental Car of N.H. v. Westinghouse Electric Corp.* (1980), 496 F. Supp. 373, 378.

Under Civ. R. 23(A) (3), the claims or defenses of the representative party must be typical of the class. *Warner, supra,* at 98. This requirement is met when there is no express conflict between the representative and the class. *Id., Marks, supra,* at 202. Civ. R. 23(A)(4) requires adequacy of representation and adequacy of counsel. As to adequacy of counsel, nothing in the record of this case indicates that counsel for appellant was not fully qualified to litigate this class action. A representative of the class is deemed adequate so long as his interests are not antagonistic to other class members. *Id.* Civ. R. 23(A) (3) and 23(A) (4) present issues which cause difficulties in the requested class certification. Appellant seeks to represent both former and present dealers of Standard. In a case where the sole class representative has terminated his relationship with the defendant, questions concerning the ability of that representative to represent individuals with an ongoing relationship with the defendant arise. 1 Newberg on Class Actions (1985 Ed.), Section 3.35. Of great concern is the fact that the former dealer (employee, franchisee, distributor, etc.) cannot represent current dealers due to a conflict between the representative and the class and/or an antagonism between his interests and those of the class. *McMahon Books, Inc. v. Willow Grove Associates* (E.D. Pa. 1985), 108 F.R.D. 32, 36; *Southern Snack Foods v. J.J. Snack Foods* (D. New Jersey 1978), 79 F.R.D. 678; *Aamco Automatic Transmissions, Inc. v. Tayloe* (E.D. Pa. 1975), 67 F.R.D. 440, 445; *Hoaglund v. Convenient Industries of America, Inc.* (D.C. Mass. 1975), 20 Fed. R. Serv. 2d 858;

*Matarazzo v. Friendly Ice Cream Corporation* (E.D. New York 1974), 62 F.R.D. 65; *DiCostanzo v. Hertz Corporation* (D.C. Mass. 1974), 63 F.R.D. 150, 151; *Thompson v. TFI Companies, Inc.* (N.D. Ill. 1974), 64 F.R.D. 140; *McMackin v. Schwinn Bicycle Co.* (N.D. Ill. 1973), 21 Fed. R. Serv. 2d 1306. Generally, courts hold that current dealers are interested in economic viability of a business and in maintaining an amicable relationship with that business. Former dealers are essentially interested in the recovery of monetary damages without regard to the possible adverse impact on the present system. *Mularkey v. Holsum Bakery, Inc.* (D.C. Ariz. 1988), 120 F.R.D. 118; *Aamco, supra,* at 446. Thus, it is apparent that appellant cannot adequately represent a class consisting of both former and present dealers. However, the remedy applied in such situations does not always necessitate the total denial of class action certification. Under such circumstances, federal courts have redefined the class in such a way that the former dealer represented only those with like interests, see, *e.g., Bogosian v. Gulf Oil Corp.* (C.A.3, 1977), 561 F. 2d 434, on remand (E.D. Pa. 1984), 596 F. Supp. 62, or permitted a current dealer to join the class as a class representative, see, *e.g., Mularkey, supra,* at 121, and/or limited class certification to the question of liability only. *Id.* This latter method eliminates the difficulty encountered at the remedy phase of the trial in a suit seeking both damages and equitable relief. *Id.* We, therefore, conclude that the trial court need not have totally denied certification based upon antagonistic or conflicting interests. Accord, *Rental Car of N.H., supra,* at 383-384.

Although appellant asserts that this action qualifies for class certification under all three categories of Civ. R. 23(B), we are not of the same opinion.

Civ. R. 23(B)(1)(a) permits "class certification if separate actions would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards for the party opposing the class." *Warner, supra,* at 95. This case appears to be one which would lead to incompatible standards of conduct if separate actions were pursued. *Id.,* at 95, n. 2. In this case, the potential parties of the class are all subject to the terms of a lease agreement or series of lease agreements. In separate adjudications, the lease may be held to be the basis for a tying arrangement in one action but not in another. This would impose incompatible standards of conduct on appellee. Thus, the class *might* be maintainable under Civ. R. 23(B)(1)(a).

Civ. R. 23(B)(1)(b) is employed in class actions where the amount of money available to plaintiffs is limited and separate actions would risk the depletion of a fund before all deserving parties could make a claim. *Id.,* at 95. There is no indication in the record of this case to indicate that this situation exists as to Standard. Therefore, it would be inappropriate to certify this cause pursuant to Civ. R. 23(B)(1)(b).

Likewise, Civ. R. 23(B) (2) is inapplicable. As noted in *Warner, supra,* at 95, Civ. R. 23(B) (2) has its primary application in a suit seeking injunctive relief. The same difficulty encountered in *Warner* in certifying a class under Civ. R. 23(B) (2) is applicable to this case. It is unknown which parties are solely seeking injunctive and declaratory relief. The complaint itself combines claims for monetary damages, injunctive and declaratory relief. Therefore, this action cannot be certified under Civ. R. 23(B)(2) at this point in time.[3]

A majority of antitrust cases, such as the one before us, are maintained as class actions under the auspices of Civ. R. 23(B) (3). 7B Wright, Miller & Kane, Federal Practice and Procedure (1986), Section 1781. In *Warner, supra,* at 95-96, the Supreme Court of Ohio characterized a class action brought under this section as a "damage" action and held that qualification as a class action under this provision required the following two findings:

"that the common questions predominate over questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Professor Miller states, '[t]he key should be whether the efficiency and economy of common adjudication outweigh the difficulties and complexity of individual treatment of class members' claims.'"

Thus, under Civ. R. 23(B) (3) the issues of the predominance of common questions and the superiority of a class action over separate actions must be resolved in favor of appellant.

The pivotal question in deciding predominance is whether appellee's liability depends on legal and factual questions common to all dealers, both former and present, throughout the entire period (at least from 1960 to the present) that said dealers entered into lease agreements with Standard. A court cannot reach the merits of a litigant's claims in determining class

certification. *Ojalvo v. Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St. 3d 230, 232. Therefore, the resolution of the predominance question requires only a brief analysis of the claims to be litigated and the proof to be required at trial. *Halverson v. Convenient Food Mart, Inc.* (N.D. Ill. 1974), 69 F.R.D. 331, 334. We have previously held that the class in the case at bar cannot be maintained as presently defined. Our discussion of certification pursuant to Civ. R. 23(B)(3) is, therefore, applicable only when and if a proper class is presented to the court below for certification.

The overriding issue in this case is whether appellant's four causes of action can be determined solely based upon standard lease agreements and the proof arising from those leases. *Bogosian, supra,* at 452-456; 1 Newberg, *supra,* Section 4.26. If each cause of action requires individualized proof, that is, proof from sources extrinsic to the lease agreement, then common questions do not predominate. *Halverson, supra,* at 335. See, also, *Hewitt v. Joyce Beverages of Wisconsin, Inc.* (N.D. Ill. 1982), 97 F.R.D. 350, 352, affirmed (C.A.7, 1983), 721 F. 2d 625; *Bogosian,* supra; *Ungar v. Dunkin Donuts of America, Inc.* (C.A. 3, 1976), 531 F. 2d 1211. In other words, common questions of law and fact must represent a significant aspect of the class and be capable of resolution for all members of the class in a single adjudication. *Schmidt v. Avco Corp.* (1984), 15 Ohio St. 3d 310, 315.

Appellant's four claims sound in (1) antitrust; (2) breach of fiduciary duty; (3) tortious interference with business relationships; and (4) violations of the Consumer Sales Practices Act. Without discussing the merits of appellant's claims, we find that a class action *may* be maintainable under Civ. R. 23(B) (3) by an appropriate class. Appellant provided evidence of standard lease forms utilized by appellee in the years 1975 and 1978. In his affidavit he asserted that all Ohio dealers were subject to said agreements. Griffin also testified that all dealers were subject to the preprinted portions of the lease agreements and could cite no instance where variance of the terms of the agreement was requested or permitted. However, there was an implication that the course of conduct by Standard towards it dealers may not have been uniform throughout the relevant period. Therefore, on remand, the trial court should make an effort to adduce evidence in order to determine whether individualized questions as to coercion, injury, damages[4] and possible counterclaims

will predominate over common questions arising from the lease agreements, thereby precluding class certification. See, 1 Newberg, *supra;* 7A Miller, Wright & Kane (1986 Ed.), Section 1778 (and the cases cited therein); 7D Miller, Wright & Kane, *supra,* Section 1781 (and the cases cited therein). If it is found that individualized questions do not predominate, the class action will not be the superior form in which to proceed due to difficulties with class management and the danger that the case would fragment into a series of mini-trials involving the individual relationships between each dealer and Standard. See *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation* (C.A.9, 1982), 691 F. 2d 1335. If the court finds that common questions do predominate, it must still determine that a class action is the superior method to settle the controversy. *Id.* In making such a determination, a court should keep in mind the issues of damages, the representative's financial ability to pursue a separate suit, and judicial economy and fairness. *Bogosian, supra; Mularkey, supra,* at 122. See, also, 7B Miller, Wright & Kane, *supra,* Section 1781. Cf. *DiCostanzo, supra; Thompson, supra, Hewitt, supra; Schmidt, supra.*

In *Ojalvo, supra,* at 232-233, the Supreme Court of Ohio held that a "mere analytic error" does not constitute an abuse of discretion. However, the court went on to further find in *Warner, supra,* at 95, n. 10, that "where a trial court completely misconstrues the letter and spirit of the law, it is clear that the court has been unreasonable and has abused its discretion." The trial court abused its discretion in this case by totally denying class certification without considering that the prerequisites of Civ. R. 23 might be met by alternate means and in failing to adduce evidence as to an appropriately defined class. Accordingly, we reverse the trial court's decision and remand this case back to that court for further proceedings not inconsistent with this judgment.

In regard to the motion to compel, appellant contends that the trial court abused its discretion by failing to rule on said motion. A trial court has broad discretion in controlling the discovery process. *State, ex rel. Dagget, v. Gessaman* (1973), 34 Ohio St. 2d 55. In exercising its discretion, the court balances the relevancy of the discovery request, the requesting party's need for discovery, and the hardship upon the party from whom the discovery was requested. *Stegawski v. Cleveland Anesthesia*

*Group, Inc.* (1987), 37 Ohio App. 3d 78, 85. A decision which, in effect, bars the requesting party from pursuing discovery cannot be reversed by an appellate court absent a showing of substantial prejudice to that party. *Id.* See, also, *Bell v. Le-Ge, Inc.* (1985), 20 Ohio App. 3d 128, 131-132. In light of our decision, appellant was not substantially prejudiced by the trial court's failure to rule on the motion to compel answers to interrogatories. We, therefore find, that there was no abuse of discretion as to assignment of error, subpart (8). Subparts (2), (3) and (8) are found not well-taken. Subpart (7) is found well-taken.

On consideration whereof, this court finds that substantial justice was not done the party complaining, and the judgment of the Huron County Court of Common Pleas is reversed. This cause is remanded to said court for further proceedings not inconsistent with this judgment. Costs of this appeal assessed to appellee.

HANDWORK, P.J., GLASSER, J., and RESNICK, J., concur.

---

[1] We note that the trial court was neither required to provide "notice" nor to meet with the attorneys before deciding the certification issue.

[2] For example, a lease agreement from 1975 required a dealer to purchase a "base gallonage" for any lease year. A lease agreement signed by Shaver in 1978 required that the dealer sell a minimum volume of standard motor fuel during the lease period.

[3] Certification of a class may be possible under Civ. R. 23(B) (2) if, upon remand, an appropriate class is defined and an adequate representative is named as a party.

[4] There is also the question as to whether Shaver as a former dealer has the ability and/or standing to request injunctive relief. 1 Newberg, *supra*, at Section 3.35. See *Halverson, supra*, at 334 (only remedy available to former franchisees is monetary damages). This issue will have to be determined by the trial court on remand and depends upon the proposed class or classes.