OPINION
{¶ 1} Plaintiffs-appellants Abe and Tammy Kinney appeal from the February 17, 2004, Judgment Entry of the Tuscarawas County Court of Common Pleas denying their Motion for Class Certification.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In June of 2000, appellants Abe and Tammy Kinney decided to purchase a new manufactured home and related delivery, installation and construction services from Paradise Homes, Inc., which is now defunct. While the home was to be manufactured by New Era, the home was to be set up by Paradise Homes. Paradise Homes arranged a purchase money loan through appellee Woodland Capital Corporation, a Minnesota mortgage lender, for appellants to purchase the home and related installation and construction services. The loan closed at Paradise's office.
 {¶ 3} At the loan closing on October 6, 2000, appellants were told by Paradise Homes that the home would be ready for occupancy in eight to twelve weeks. However, the home was not manufactured until March 15, 2001, and it was not until April 12, 2001, that Paradise began work on the foundation. Although, as of August of 2001, the home was still not completed and lacked water, electric or sewer hook-ups, appellants had to move into the same on August 17, 2001, for financial reasons. Appellants were not able to afford paying both rent for an apartment and the loan on the home.
 {¶ 4} When they moved into the home, appellants discovered substantial water damage and faulty workmanship. New Era, the manufacturer of the home inspected the same and determined that there were no manufacturing defects and that any defects in the home were attributable to Paradise Homes' installation and set-up of the same. Despite appellants' requests, Paradise Homes, however, refused to make any repairs.
 {¶ 5} Appellee Woodland required appellants to make monthly installment payments on the loan six months after the October 6, 2000, closing, even though it knew that the home had yet to be delivered and that appellants believed that Paradise Homes had breached its duties to them under the agreement to purchase the same. Appellants contend that appellee Woodland, over their objections and instructions to the contrary, paid funds to Paradise Homes that were not due and owing from appellants' draw account.
 {¶ 6} On April 25, 2003, appellants filed a "class action complaint" against appellee Woodland, alleging that the transaction between appellee Woodland and appellants was a consumer credit transaction subject to the Federal Trade Commission rule on preservation of consumer claims and defenses and that, therefore, appellee Woodland was subject to all claims and defenses that appellants could assert against Paradise Homes. Appellants, in their complaint, also alleged that appellee Woodland had violated the Ohio Consumer Sales Practices Act, the Ohio Retail Installment Sales Act, the Ohio Corrupt Practices Act and that appellee Woodland was not licensed in Ohio to make residential loans. Finally, appellants also asserted state law causes of action based on fraud and misrepresentation.
 {¶ 7} Appellants, in their complaint and their April 25, 2003, Motion for Class Certification, asked the trial court to certify a multi-state class consisting of "all individuals who, on or after October 6, 2000, did or will be parties to a consumer credit contract with defendant [appellee] (or any predecessors in interest) arising through seller referral or assignment, the proceeds of which were or will be used in substantial part to purchase goods and/or services from the seller for personal, family, or household purposes." Appellants indicated that the class would exceed 500 members. Appellants also asked the trial court to certify a sub-class "defined as all such persons who did or will enter such contracts in the state of Ohio." Appellants indicated that there would be over 100 members of the sub-class.
 {¶ 8} Appellee, on June 26, 2003, filed a response to appellants' Motion for Class Certification. As memorialized in a Judgment Entry filed on February 17, 2004, the trial court denied such motion, finding that appellants had not satisfied that "typicality" and "adequacy of representation" prerequisites for class certification pursuant to Civ. R. 23.
 {¶ 9} It is from the trial court's February 17, 2004, Judgment Entry that appellants now appeal, raising the following assignment of error:
 {¶ 10} "The trial court abused its discretion in holding that the kinneys failed to establish satisfaction of the "typicality" and "Adequacy of Representation" factors of rule 23(a)(3) and (a)(4)."
 I {¶ 11} Appellants, in their sole assignment of error, argue that the trial court abused its discretion in holding that appellants had failed to meet the "typicality" and "adequacy of representation" prerequisites for class certification pursuant to Civ. R. 23. We disagree.[1]
 {¶ 12} Class certification is governed by Civ. R. 23. Civil Rule 23 states as follows:
 {¶ 13} "(A) Prerequisites to a class action
 {¶ 14} "One or more members of a class may sue . . . as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 {¶ 15} "(B) Class actions maintainable
 {¶ 16} "An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:
 {¶ 17} "(1) the prosecution of separate actions by . . . individual members of the class would create a risk of
 {¶ 18} "(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
 {¶ 19} "(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 {¶ 20} "(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 {¶ 21} "(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action."
 {¶ 22} In addition, courts have held that the following are elements not explicitly found in Civ. R. 23, but are required for certification: (1) that the class be identifiable and that the definition of the class be unambiguous; and (2) that the class representative be a member of the class. Shaver v. Standard Oil Co. (1990), 68 Ohio App.3d 783, 793,589 N.E.2d 1348.
 {¶ 23} If a plaintiff fails to prove any one of the prerequisites of Civ. R. 23 or either of the two implicit requirements of Civ. R. 23, class certification should be denied by the trial court. Shaver, supra.
 {¶ 24} This court's standard of review concerning a trial court's decision whether a class action may be maintained is abuse of discretion. Planned Parenthood Association of Cincinnati, Inc. v. ProjectJericho (1990), 52 Ohio St.3d 56, 62, 556 N.E.2d 157. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.
 {¶ 25} We find that the trial court did not abuse its discretion in denying appellants' motion requesting class certification since such decision was not unreasonable, arbitrary, or unconscionable. We concur with the trial court that appellants' claims are not typical of those of the purported class and that appellants failed to satisfy the "adequacy of representation" requirement.
 {¶ 26} With respect to typicality, the focus is on whether the claims or defenses raised by the representative are typical of those which would be raised by other members of the class, or if they are in conflict.Warner v. Waste Mgt., Inc. (1988), 36 Ohio St.3d 91, 98, 521 N.E.2d 1091,1097. "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." Baughman v.State Farm Mut. Auto. Ins. Co. 88 Ohio St.3d 480, 485, 2000-Ohio-397,727 N.E.2d 1265. (Citations omitted). The purpose of this provision is to protect absent class members. Pyles v. Johnson, 143 Ohio App.3d 720,734, 2000-Ohio-2478, 758 N.E.2d 1182.
 {¶ 27} In the case sub judice, appellants contended that appellee violated both federal and Ohio laws in providing consumer financing, through Paradise Homes, a retail seller, to appellants. As noted by appellee with respect to the proposed class, individuals who entered into a consumer credit loan with appellee in states other than Ohio "would not have appellants' specific Ohio law claims" against appellee. Thus, with respect to the proposed class, the claims are not typical. Moreover, since the evidence reveals that appellee made only nine (9) consumer credit loans in Ohio since October 6, 2000, there are only nine (9) members of the requested sub-class. However, we concur with appellee that appellants had produced no evidence establishing that such individuals have similar complaints against appellee.
 {¶ 28} Furthermore, we find that appellants' claimed damages are unique from those of both the proposed class and sub-class. But for appellants' problems with Paradise Homes and its alleged negligence, appellants would not have any damages. In a similar case, Elsea FinancialServices, Inc. v. Burkhart, Morgan App. No. CA-01-01, 2001-Ohio-1425,2001 WL 1169609, the appellants purchased a manufactured home from the appellee via a retail installment sales contract. After defects in the home remained unrepaired, the appellants ceased making payments on the retail installment sale contract. The appellee then filed a complaint against the appellants for the amount due on the contract. In response, the appellants filed an answer and a counterclaim which included a request that a class be certified of "all persons subjected to collection activity by [appellee] arising from the purchase of a manufactured home from [appellee] for use as a personal residence at any time on or after May 1, 2000."
 {¶ 29} After the trial court denied the request for class certification, the appellants appealed. In affirming the judgment of the trial court, this Court stated, in relevant part, as follows: "In the matter sub judice, the trial court provided three separate reasons for denial of class certification: numerosity, commonality, and typicality. Given appellants' unique circumstances concerning damage occasioned by delivery and appellants' specific allegations concerning their claims for negligent repair and unworkmanlike setup of their home, we find no abuse of discretion in the trial court's denial of appellants' motion for class certification pursuant to Civ. R. 23." Id. at 2.
 {¶ 30} In the case sub judice, appellant's damages are also the result of alleged unworkmanlike delivery and set-up of their home. Given that, in the case sub judice, appellants' proposed class and sub-class, is not, as in Elsea, limited to manufactured home purchasers but includes parties to a consumer credit contract with appellee, the proceeds of which were or will be used to purchase personal, family, or household goods and/or services, appellants' damages would be even more unique.[2] In short, there is no evidence that others who financed purchases through appellee suffered the same type of damages.
 {¶ 31} The trial court, in this matter, also found that appellant failed to satisfy the "adequacy of representation" prerequisite of Civ. R. 23. This is a two-fold inquiry concerning both the adequacy of the class representatives to protect the interests of the class, and the competency of plaintiffs' counsel to represent them in the class action.Warner v. Waste Management Inc., supra; Hamilton v. Ohio Sav. Bank,82 Ohio St.3d 67, 78-79, 1998-Ohio-365, 694 N.E.2d 442. A class member is an adequate representative as long as its interest is not antagonistic to the other class members. Hamilton, supra. at 78. In the case sub judice, appellee does not contest the competency of appellants' counsel. Thus the issue becomes the adequacy of the class representatives to protect the interests of the class.
 {¶ 32} We concur with the trial court that appellants could not fairly and adequately represent the interests of the proposed class. As is stated above, appellants' proposed class would include both Ohio and non-Ohio members. While most of the claims in appellants' complaint are based upon Ohio law, the vast majority of the proposed class[3] could not state a claim under Ohio law. Rather, such class members would have claims based on the law of the class member's home state.
 {¶ 33} Based on the foregoing, we find that the trial court's decision denying appellants' Motion for Class Certification was not arbitrary, capricious or unreasonable.
 {¶ 34} Appellants' sole assignment of error is, therefore, overruled.
 {¶ 35} Accordingly, the judgment of the Tuscarawas County Court of Common Pleas is affirmed.
By: Edwards, J. Wise, P.J. and Boggins, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas is affirmed. Costs assessed to appellants.
[1] Appellants, in their brief, argue, in part, that the trial court did not allow them any "class discovery". However, since appellants have not assigned the trial court's alleged failure to allow them time for discovery with respect to their request for class certification as error, we shall not address such issue.
[2] Recently, this Court, in Tammac v. Norch, Stark App. No. 2002CA00402, 2003-Ohio-2724, 2003 WL 21224229 addressed a similar issue. In Tammac, appellant Robert Norch signed a promissory note, security agreement, and mortgage for the purchase of a manufactured home and related construction services from Paradise Homes. Paradise arranged financing for the purchase through the appellee, Tammac Corporation, a consumer financing entity. As in the case sub judice, there allegedly were defects in the home that Paradise failed to repair. After appellant Robert Norch called Tammac Corporation and notified it of his intent to cancel the transaction, he purportedly was told by Tammac that it had a right to be paid in accordance with its financing agreements with him.
Tammac subsequently filed a foreclosure action against appellants Robert Norch and his wife. Appellants filed an answer and counterclaim raising consumer rights claims. Appellants also filed a motion for class certification as to their breach of contract claim and certification of a subclass for the remaining claims. The appellants sought a definition of a class as "all individuals who, on or after August 16, 1987 (or such earlier or later limitation date for contract actions as specified by the law of the state in which the transaction was made), did or will enter a credit sale contract or purchase money loan with plaintiff [Tammac] (or any predecessors in interest) the proceeds of which were or will be used to purchase goods and/or services for personal, family or household purposes, under consumer credit contracts similar to those used [in the Norch transaction]." The sub-class sought consisted of "all such persons who did or will enter such transactions in the State of Ohio at any time on or after December 1, 1998."
After the trial court denied the appellants' motion for class certification, the appellants appealed, arguing, in part, that the trial court erred in holding that appellants had failed to satisfy the "typicality" and "adequacy of representation" prerequisites found in Civ. R. 23.
This Court affirmed the judgment of the trial court, finding that the trial court did not abuse its discretion in holding that the "adequacy of representation criteria had not been met. In so holding, this Court noted that the case involved a class action counterclaim, as opposed to complaint, and that there was a danger in such cases that the class action was brought as a retaliatory measure and that if the class representative succeeded on the main action, he would not continue to actively litigate the class action. This Court further found, implicitly, that the "typicality" factor of Civ. R. 23 was not satisfied.
[3] As is stated above, the sub-class would have consisted of nine (9) Ohio residents.