**SHAVER, Appellant, et al.,**

v.

**STANDARD·OIL COMPANY, Appellee.**

[Cite as *Shaver v. Standard Oil Co.* (1993), 89 Ohio App.3d 52.]

Court of Appeals of Ohio,
Huron County.

No. H–92–15.

Decided June 30, 1993.

54

*Murray & Murray, Dennis Murray* and *Kirk Delli Bovi*, for appellant.

*Walter Rekstis III, Frank DiPiero, William Owens* and *Judith Yokaitis–Skutnik,* for appellee.

HANDWORK, Judge.

This case has previously been considered on appeal by this court. *Shaver v. Standard Oil Co.* (1990), 68 Ohio App.3d 783, 589 N.E.2d 1348. This case began on October 13, 1981 when appellant, Kenneth B. Shaver, filed a complaint against appellee, the Standard Oil Company, in the Huron County Court of Common Pleas. Appellant included allegations in his complaint that appellee had violated state antitrust laws, had breached a fiduciary duty, had violated the Consumer Sales Practices Act, and had tortiously interfered in business relationships. Each of the allegations related to dealings by appellee with appellant while he leased a full-service gas station from appellee and operated it as an independent dealer. Appellant alleged, in essence, that appellee had engaged in practices which were designed to force appellant out of business so that appellee could convert its leased station into a company-owned and -operated station.

Subsequent to filing the complaint, appellant sought certification of a class to pursue all four causes of action against appellee on behalf of all past and present independent dealers with whom appellee contracted, alleging that appellee had a goal of forcing all of the independent dealers in the class out of business. On November 21, 1989, the trial court filed a judgment entry containing the court's

denial of the class certification request. Appellant filed an appeal to this court. On October 19, 1990 this court issued a decision and judgment entry in which the decision of the trial court was reversed, and the case was remanded for further proceedings. *Id.* at 799, 589 N.E.2d at 1358.

Appellant and appellee then filed post-remand briefs in the trial court. Appellant narrowed the scope of the requested class certification to include only past independent dealers who contracted with appellee to lease and operate gas stations owned by appellee. On March 12, 1992, the Huron County Court of Common Pleas filed a judgment entry in which the request for class certification was denied. Appellant then brought this appeal, presenting one assignment of error for consideration, which is:

"The trial court abused its discretion when it determined that none of plaintiff's four causes of action merited class action treatment."

Appellant contends that the trial court erred when it denied class certification in this case on the basis (1) that appellant did not demonstrate that his claims were typical to the claims of the class, a requirement found in Civ.R. 23(A)(3); (2) that an inconsistent course of conduct could not be imposed upon appellee if all claims of former independent dealers were tried separately, rather than as a class action, thereby precluding the application of Civ.R. 23(B)(1)(a) in this case; (3) that the requirement of predominance of common questions over individual questions, found in Civ.R. 23(B)(3), was not met in this case. As to the issue of common questions versus individual questions, appellant argues that the trial court applied improper standards in determining that individual questions were predominant for each of the four causes of action raised by appellant. First, appellant argues that there is no requirement in an antitrust action based upon "tying violations" that there be proof of individual coercion on a case-by-case basis and that the trial court erred when it concluded that proof of individual coercion would be needed. Second, appellant argues that the trial court erred when it ruled that the existence of a fiduciary duty could only be shown by "examining the state of mind of each member of the class." Third, appellant argues that the trial court erred when it ruled that proof of individual coercion would be required for the claim brought pursuant to the Consumer Sales Practices Act. And fourth, appellant argues that the trial court made the same error of applying an incorrect standard when it ruled that tortious interference with a business relationship would require a case-by-case showing of how appellee's actions deprived individual dealers of customers. Appellee argued that the trial court ruled properly in all respects and that class certification was properly denied in this case.

As we noted in the previous appeal in this case, our standard of review for an appeal from a decision regarding class certification is whether the trial court

abused its discretion. *Id.*, 68 Ohio App.3d at 793, 589 N.E.2d at 1354. That is, we must determine "whether the denial of certification was arbitrary, unreasonable or unconscionable." *Id.*, citing *Marks v. C.P. Chemical Co.* (1987), 31 Ohio St.3d 200, 201, 31 OBR 398, 399, 509 N.E.2d 1249, 1252. Keeping this standard in mind, we will consider each argument raised by appellant.

The first argument raised by appellant relates to whether appellant meets the requirement of Civ.R. 23(A)(3) that "the claims or defenses of the representative parties are typical of all of the claims or defenses of the class * * *." As this court noted on the previous appeal, a party seeking class certification must demonstrate seven prerequisites including:

"(1) that the class be identifiable and that the definition of the class be unambiguous, and (2) that the class representative(s) be a member or members of the class. * * * [E]xplicit requirements are set forth in Civ.R. 23(A) and are (1) numerosity, *i.e.*, the parties are so numerous that joinder of all members is impracticable; (2) commonality, *i.e.*, there are questions of law or fact common to the class; (3) typicality, *i.e.*, the claims or defenses of the representatives are typical of the claims or defenses of the class; and (4) the representatives will fairly and adequately protect the interests of the class. * * * The analysis under this last prerequisite is divided into a consideration of the adequacy of the representative(s) and the adequacy of counsel. * * * The final prerequisite is a determination of whether *one* of the Civ.R. 23(B) requirements is met." (Citations omitted; emphasis *sic*.) *Id.*, 68 Ohio App.3d at 793–794, 589 N.E.2d at 1355.

This court went on to note:

"Clearly, from the record before us the trial court could readily find that the prerequisite of numerosity had been met with a class of over forty individuals. * * * In addition, this was an identifiable, *i.e.*, not ambiguous, class and the plaintiff Kenneth Shaver was a member or representative of the class.

"As to commonality, courts require only a 'common nucleus of operative facts' to fulfill this prerequisite. * * * Appellant alleged that Standard engaged in a common course of conduct toward all dealers and set forth legal issues, *e.g.*, breach of fiduciary duty, restraint of trade, tortious interference with business relationships, violations of the Consumer Sales Practices Act, common to the class. * * * Griffin [a former corporate vice president of Standard] testified that the preprinted portions of the leases did not vary and was unable to cite any instance where the terms of the agreement had varied. By providing standardized lease agreements which were uniformly imposed on the dealers by Standard, appellant met the threshold requirement of commonality." (Citations omitted.) *Id.*, 68 Ohio App.3d at 795, 589 N.E.2d at 1355–1356.

On remand appellee did not argue that appellant was not a member of the class, that the class was not identifiable, that appellant failed to demonstrate the numerosity requirement or that there was no compliance with the commonality requirement. Appellee did contend that appellant failed to meet the requirement of Civ.R. 23(A)(3) of presenting typical claims. Appellee argued that each of the four causes of action alleged by appellant had at least one element which could only be proved on a case-by-case basis. The trial court agreed with the reasoning of appellee and ruled that appellant failed to meet the typicality requirement.

 The Supreme Court of Ohio has stated: "The typicality requirement has been found to be satisfied where there is no express conflict between the representatives and the class." *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 98, 521 N.E.2d 1091, 1097. The criterion announced by the Supreme Court does not focus on the question of whether alleged causes of action would require individualized proof on a case-by-case basis, an issue more properly addressed pursuant to Civ.R. 23(B)(3); rather, the focus is on whether the claims or defenses raised by the representative are typical of those which would be raised by other members of the class, or if they are in conflict. *Id.* at 98, 521 N.E.2d at 1097. When this case was previously considered on appeal, this court ruled that appellant did not meet the typicality requirement because the class, as it was then defined, included current independent dealers who could have interests in conflict with appellant, a past independent dealer. *Shaver v. Standard Oil Co.,* 68 Ohio App.3d at 795–796, 589 N.E.2d at 1355–1357. The problem identified by this court was responded to when appellant narrowed the definition of the class to exclude current independent dealers. While this court made no dispositive finding that a class comprised of only former independent dealers who contracted with appellee would correct the typicality deficiency when this case was previously considered on appeal, *id.* at 796, 589 N.E.2d at 1356, we now conclude that the claims presented by appellant are typical of those which could be presented by other members of the newly defined class and that there is no apparent conflict between appellant and the class members.

 Appellee argues that a conflict does exist because appellee has filed a counterclaim against appellant. Appellee contends that because appellant must defend the counterclaim, and because the issues of the counterclaim are unique to him, his representation of the class is inadequate. Appellee has cited two federal cases in support of its contention, *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (C.A.2, 1990), 903 F.2d 176, certiorari denied (1991), 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667; *Dubin v. Miller* (D.Colo.1990), 132 F.R.D. 269, but both cases are distinguishable. In each of the cases cited, the representative of the class was subject to a defense which would

prevent the representative from prevailing on the very claim the representative wished to bring on behalf of the class. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d at 180; *Dubin v. Miller,* 132 F.R.D. at 275. In this case, the defense appellee has raised against appellant is a counterclaim which can be bifurcated and which would merely raise the issue of a setoff in the event that the class should prevail in its suit, entitling class members, including appellant, to recover damages from appellee. The existence of the counterclaim does not destroy the ability of appellant to comply with the typicality requirement of Civ.R. 23(A)(3), nor does it render appellant an inadequate representative pursuant to Civ.R. 23(A)(4).

■ Even though appellant can demonstrate that the requirements of Civ.R. 23(A) are met, the trial court's denial of the class certification request must still be affirmed if appellant cannot demonstrate that one of the requirements listed under Civ.R. 23(B) is met. *Warner v. Waste Mgt., Inc.,* 36 Ohio St.3d at 94, 521 N.E.2d at 1094. Appellant contends that the trial court abused its discretion when it concluded in this case: "[T]here is no risk of incompatible standards of conduct for Sohio with respect to the proposed class as the proposed class is now only *former* dealers, and any adjudication with respect to Shaver will not affect the rights of others of the proposed class to protect their interests." The statement of the trial court indicated a ruling that appellant did not demonstrate compliance with Civ.R. 23(B)(1)(a), which reads:

"An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class * * *."

The Supreme Court of Ohio made the following observation regarding Civ.R. 23(B)(1)(a):

"Civ.R. 23(B)(1)(a) will permit class certification if separate actions would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class." *Warner v. Waste Mgt., Inc.,* 36 Ohio St.3d at 95, 521 N.E.2d at 1095.

The Supreme Court then stated that even though some plaintiffs involved in the case under consideration might recover damages and others might not if the cases were tried separately, that situation did not trigger the provisions of Civ.R. 23(B)(1)(a), because it did not result in the defendant's being held to different

standards of conduct. *Id.* Likewise, the Ninth District Court of Appeals, when considering the portion of Fed.R.Civ.P. 23 which corresponds to the language of Civ.R. 23(B)(1)(a) determined that " 'incompatible standards of conduct' * * * must be interpreted to be incompatible standards of conduct required of the defendant in fulfilling judgments in separate actions. * * * In this case, a judgment that defendants were liable to one plaintiff would not require action inconsistent with a judgment that they were liable to another plaintiff. By paying the first judgment, defendants could act consistently with both judgments." (Citations omitted.) *McDonnell Douglas Corp. v. United States Dist. Court* (C.A.9, 1975), 523 F.2d 1083, 1086, certiorari denied (1976), 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761.

Based on the precedent established, this court cannot conclude that the trial court abused its discretion when it ruled that there is no danger of appellee's being subject to incompatible standards of conduct. The issue of the possibility of different results if the causes of action were brought separately is a distinct issue from the question of whether appellee would be subject to different courses of conduct, and is better addressed under Civ.R. 23(B)(3). Since the current class is composed of only past independent dealers, appellee has no continuing course of conduct in relation to the class members. Appellant's argument that inconsistent results in separately maintained suits could lead to inconsistent standards of conduct by appellee in relation to present dealers is unpersuasive because the rule relates to conduct connected to class members.

The final question for consideration, then, is whether the trial court erred when it ruled that the requirements established in Civ.R. 23(B)(3) were not met in this case. Civ.R. 23(B)(3) provides:

"An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:

" * * * *

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action."

The trial court considered each of the four causes of action brought by appellant and concluded that each cause of action had at least one element which could only be proved on a case-by-case basis. The trial court therefore concluded that individual questions were more predominant than common questions and ruled that certification was not appropriate pursuant to Civ.R. 23(B)(3). Appellant contends this ruling was in error and presents argument relating to each of the four causes of action to demonstrate that common questions do prevail.

■ The first cause of action raised by appellant is based upon allegations that appellee violated antitrust laws of the state of Ohio, commonly referred to as the Valentine Act, located at R.C. 1331.01 *et seq.* Specifically, appellant alleges that appellee engaged in a restraint of trade by coercing independent dealers who contracted with appellee to:

"(a) license the use of Sohio's trademark;

"(b) sell only Sohio gasoline;

"(c) not sell gasoline purchased from any other source;

"(d) sell only Sohio and Atlas TBA; and

"(e) not sell TBA purchased from any other source."

In essence, appellant is alleging that appellee unlawfully compelled independent dealers to agree to a "tying" agreement which resulted in a restraint of trade. A "tying agreement" is: "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." *N. Pacific Ry. Co. v. United States* (1958), 356 U.S. 1, 5–6, 78 S.Ct. 514, 519, 2 L.Ed.2d 545, 550. Federal courts considering class certification requests based upon allegations of tying arrangements which violated federal antitrust laws have struggled with the question of (1) whether coercion is an element which must be proved in a case involving illegal tying agreements; and (2) if coercion is an element, must it be demonstrated on a case-by-case basis. See, *e.g., Ungar v. Dunkin' Donuts of Am., Inc.* (C.A.3, 1975), 531 F.2d 1211, 1217–1226, certiorari denied (1976), 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84; *Bogosian v. Gulf Oil Corp.* (E.D.Pa.1984), 596 F.Supp. 62, 73–76.

As to the first issue, federal courts now appear to be in consensus that coercion is an element which must be proved. *Bogosian v. Gulf Oil Corp.,* 596 F.Supp. at 74–76. Furthermore, appellant has specifically alleged coercion as a part of its cause of action. As to the second issue, among federal courts some differences remain regarding the method of proof required for coercion. *Id.* Some courts have declared that coercion must be proved on a case-by-case basis, and have disallowed class actions brought on the basis of an antitrust violation springing

from alleged illegal tying agreements. *Ungar v. Dunkin' Donuts of Am., Inc.,* 531 F.2d at 1226. Other courts have ruled that, in some circumstances, no case-by-case proof of coercion is needed. *Bogosian v. Gulf Oil Corp.,* 596 F.Supp. at 76. The line of demarcation appears to be whether the tying agreement is contained in an express contractual provision for a tie-in. If there is an express contractual tie-in provision, no proof of coercion is required on a case-by-case basis. *Bogosian v. Gulf Oil Corp.,* 596 F.Supp. at 76. However, when there is no expressed contractual tie-in, coercion must be proved on a case-by-case basis. *Ungar v. Dunkin' Donuts of Am., Inc.,* 531 F.2d at 1226.

This court is not aware of, nor have the parties in this case called our attention to, any case law in Ohio discussing these issues. We agree with the trial court's conclusion that coercion is an element which must be proved to sustain a cause of action for an antitrust violation based upon an illegal tying agreement. As this court noted when this case was previously considered on appeal:

"The two leases in the record of this case contain clauses relating to the use of the Standard trademark, purchase of Standard motor fuel and Atlas TBA, minimum gas volume purchases or sales required per lease period, and state that the failure to purchase or sell the minimum stated quantity shall be grounds for termination of the lease. Deposition testimony of Robert G. Griffin, a former corporate vice-president of Standard, reveals that in 1972, sixty-one percent of the two thousand-plus Standard stations in the state of Ohio were operated by dealers and that twenty-five percent of the total number of Standard stations in this state were operated by such dealers in the year 1979. Griffin testified that these dealers would lease the service station facilities from Sohio per a lease or licensing agreement, paying a monthly rental. Griffin testified that there were over five hundred Standard stations in Ohio in 1980. Griffin also testified that lease negotiations were handled by field managers and could vary from dealer to dealer. He further stated that different versions of the preprinted or standard-ized portions of the leases were in effect at different times throughout the relevant time period. Although Griffin admitted that to his knowledge no dealer had ever sold or requested to sell other brands of motor fuel or TBA, he further stated that there was no express prohibition in the lease agreements precluding the sale of other brands.

"In addition, documents submitted by appellant and the testimony of Griffin disclosed that Standard engaged in a divestiture plan during the 1970s which resulted in a dramatic decrease in the number of stations operated by dealers as compared to company controlled stations (from two-thirds down to one-fourth). However, the plan itself indicates that the decision to cease operation of certain stations depended upon several factors including volume, condition of the station, and the availability of a replacement location. Nevertheless, changes in the lease

agreements from 1975 to 1978 disclose that increased minimum volumes of Standard gasoline were required to be purchased by dealers." (Footnote omitted.) *Shaver v. Standard Oil Co.,* 68 Ohio App.3d at 794–795, 589 N.E.2d at 1355.

The record now contains more than two contracts, but the provisions are substantially the same as those previously described by this court. We conclude that the trial court did abuse its discretion when it ruled that certification of the class in regard to the antitrust claim was inappropriate because coercion would have to be proved on a case-by-case basis. The tie-in provisions are express contractual terms, allowing a jury to conclude that the terms were in fact coercive and illegal. Individual proof is not required, and certification should be granted.

The second cause of action alleged by appellant was a claim for a breach of fiduciary duty. Appellant argues that because Ohio courts recognize some business transactions and relationships as creating fiduciary relationships as a matter of law, the trial court was compelled to declare the existence of a fiduciary relationship in this instance. Appellant acknowledges that no Ohio court has previously ruled on whether the relationship between a major oil company and independent dealer to lease gasoline stations from the company automatically gives rise to fiduciary duties. Appellant argues, however, that it must be allowed to proceed on the theory that a fiduciary duty is automatically created because to rule otherwise and to dismiss the case at this stage is to improperly reach the merits of the claim. We disagree.

The trial court did not abuse its discretion when it refused to create a new theory of law regarding the proof required to show the existence of a fiduciary duty. The Supreme Court of Ohio has stated: "A 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *In re Termination of Employment of Pratt* (1974), 40 Ohio St.2d 107, 115, 69 O.O.2d 512, 517, 321 N.E.2d 603, 609. A contractual relationship alone does not automatically create a fiduciary duty. See *Blon v. Bank One, Akron, N.A.* (1988), 35 Ohio St.3d 98, 101–102, 519 N.E.2d 363, 367–368. The trial court did not reach the merits of whether a fiduciary duty was in existence in this case. Rather, it ruled that, on the basis of accepted law in Ohio, the manner of proving the existence of a fiduciary duty in this case requires a case-by-case demonstration of the existence of special confidence and trust. Because a case-by-case demonstration is required, individual questions are more predominant than common questions and class certification is not appropriate as to this cause of action pursuant to Civ.R. 23(B)(3).

The third cause of action alleged by appellant was a claim based upon an alleged violation of the Consumer Sales Practices Act. When considering wheth-

er this claim would be brought as a class action, the trial court made the following findings:

"In order to establish such a violation on behalf of the members of the proposed class, the plaintiff will be required to show that the acts of Sohio toward the proposed class were the same of [*sic* ] substantially the same. The evidence before the Court at the present time is that the proposed members of the class and Sohio were lessee-lessor, and that Sohio required the dealers to sell Sohio and Atlas tires, batteries and accessories, as the various agreements which are in the record establish no express provision prohibiting the lessees from selling non-Sohio brand products, it is incumbent on the members of the class to each show that they were in some manner coerced into selling only Sohio/Atlas products, which proof would vary with each member of the proposed class."

Appellant argues that the trial court used an inaccurate standard when it ruled that a party seeking to recover on the basis of a claimed violation of the Consumer Sales Practices Act would have to prove coercion. We agree.

The Consumer Sales Practices Act is found in R.C. 1345.01 *et seq.* The Act is designed to prohibit unfair, deceptive or unconscionable acts or practices by sellers engaged in consumer transactions. R.C. 1345.02. If a consumer alleges that a seller has engaged in deceptive practices, Ohio courts have consistently construed the applicable provisions of the Consumer Sales Practices Act as only requiring proof "that the conduct complained of 'has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts.'" *Funk v. Montgomery AMC/Jeep/Renault* (1990), 66 Ohio App.3d 815, 823, 586 N.E.2d 1113, 1119, quoting *Brown v. Bredenbeck* (1975), 2 O.O.3d 286, 287. R.C. 1345.02 also contains a nonexclusive list of acts which are automatically deemed to be deceptive. R.C. 1345.02(B)(1) through (10). The Ohio Attorney General is charged with adopting rules and regulations to clarify which acts can be automatically considered deceptive, unfair or unconscionable. R.C. 1345.05. In addition, cases in which a court determines an act to be unfair, deceptive or unconscionable are kept on file at the Attorney General's Office, and a consumer who is subjected to the same behavior which has already been declared to be unfair, deceptive or unconscionable can seek special statutory damages. R.C. 1345.09. Accordingly, an act determined to be unfair, deceptive or unconscionable to one consumer can automatically be considered unfair, deceptive or unconscionable to another consumer without any individualized showing of deception or unfair bargaining position in regard to the second consumer. *Id.* No element of coercion need be proved, and individual questions need not predominate over common questions. The trial court abused its discretion when it denied class certification for the claim based upon alleged violations of the Consumer Sales Practices Act.

The fourth, and final cause of action alleged by appellant was a claim for a tortious interference with a business relationship. When analyzing whether this claim could be brought as a class action the trial court stated:

"This would involve a determination with respect to each member of the proposed class that Sohio interfered with each individual class member's business relationship. There is no basis for this Court to determine from the existence of a contract between the proposed class member and the defendant that the defendant committed the tort of interference with the business relationship of the proposed class member, and the proof of each tort would differ for, in each instance, the plaintiff would have the burden of establishing that he was prevented from conducting his business as he saw fit by the tortious interference of the defendant. Thus, although the plaintiff may prove such an allegation, Sohio would be free to challenge each other member of the proposed class to determine what business relationship Sohio interfered with."

Appellant again argues that the trial court improperly considered the merits in reaching its ruling. We disagree. The trial court made no determination that claims for tortious interference with a business relationship did not exist. Rather, the trial court considered the method of proof required to maintain the action.

A court of appeals has ruled:

"The tort of 'business interference' occurs when a person, without a privilege, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship, or perform a contract with another." *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 9 O.O.3d 216, 379 N.E.2d 235, paragraph two of the syllabus.

Keeping those elements in mind, this court cannot find that the trial court abused its discretion when it ruled that individual questions would predominate, rather than common questions, rendering the proposed class ineligible for certification pursuant to Civ.R. 23(B)(3). Each dealer would be required to show specific customers who were induced not to enter into or to continue an ongoing business relationship with the dealer.

Accordingly, appellant's assignment of error is well taken in part and not well taken in part. The trial court erred when it refused to certify the proposed class with regard to the antitrust claim and the claim based upon an alleged violation of the Consumer Sales Practices Act. The trial court did not err when it denied class certification with regard to the breach of fiduciary duty claim and the tortious interference with a business relationship claim. The judgment of the Huron County Court of Common Pleas is reversed in part and affirmed in part.

This case is remanded for further proceedings consistent with this opinion. Appellant and appellee are each ordered to pay one half the costs of this appeal.

*Judgment reversed in part,*
*affirmed in part*
*and cause remanded.*

MELVIN L. RESNICK and SHERCK, JJ., concur.