[Cite as *Sterling Constr., Inc. v. Alkire*, 2014-Ohio-2897.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

STERLING CONSTRUCTION, INC., :

    Plaintiff-Appellee/Cross-Appellant, :

  - vs -

BRIAN ALKIRE, :

    Defendant-Appellant/Cross-Appellee. :

CASE NOS. CA2013-08-028
              CA2013-08-030

O P I N I O N
6/30/2014

CIVIL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CVH 20110196

Gary A. Kohli, 142 West Water Street, Oak Harbor, Ohio 43449, for appellee/cross-appellant

Carlile Patchen & Murphy LLP, Bryan L. Jeffries, 366 East Broad Street, Columbus, Ohio 43215, for appellant/cross-appellee

    **PIPER, J.**

    {¶ 1} Defendant-appellant/cross-appellee, Brian Alkire, appeals a decision of the Madison County Court of Common Pleas finding that the Ohio Consumer Sales Practices Act did not apply in a suit filed by plaintiff-appellee/cross-appellant, Sterling Construction, Inc. (Sterling). Sterling appeals the trial court's decision, finding that the parties did not have a contract and that Alkire was not unjustly enriched by services provided by Sterling.

    {¶ 2} Sterling is owned by Dave Kohli. Kohli met Alkire when Alkire was

approximately nine years old, and the two shared a friendship that spanned more than 30 years. At different times throughout their association, Alkire performed work on Kohli's farm and also helped with Kohli's livestock, and Kohli and his construction company performed work for Alkire and Alkire's mother.[1]

{¶ 3} In 2009, Alkire expressed his interest in purchasing a home, and consulted Kohli about renovation expenses and financing for the home. Kohli and Alkire walked through the home prior to Alkire purchasing it, and the two discussed possible remodeling scenarios. Alkire expressed his desire to see the house updated, and agreed to hire the architect suggested by Kohli in order to make renovation plans. Kohli later placed Alkire in contact with a financial institution, and Alkire obtained financing and purchased the home.

{¶ 4} Before, during, and after Alkire acquired the house, Alkire and Kohli had multiple phone conversations and walk-throughs of the house to discuss how much the renovations would cost. Kohli estimated that replacing the roof would cost $5,000, adding a porch would cost $10,000, replacing the garage door would be $1,600, replacing vinyl siding would be $3,000 and relocating electrical work would be $2,500. However, Kohli did not offer estimates for other work that was to be done because Alkire did not request additional estimates.

{¶ 5} Kohli and Sterling employees began working on Alkire's house, including replacing the roof, building the porch, replacing windows, and framing the inside of the home to make changes to the kitchen, bathroom, closets, and master bedroom. After paying a total of $40,000 to Sterling for materials and labor, Alkire and Kohli had some disagreements. Despite the fact that Sterling had not completed the remodel, Alkire directed Kohli that

---

1. Although the parties disagree on the exact nature of their friendship, the trial court makes reference to the parties' friendship and recognized multiple times in the decision that the two men had developed a friendship over the course of knowing each other 30 years.

Sterling was not to come back to his property. Neither Kohli nor Sterling's employees returned to Alkire's home after being told by Alkire not to come back. Sterling later informed Alkire that he owed $26,472.18 more for materials and services it had provided. Alkire refused to make any additional payments to Sterling.

{¶ 6} Sterling filed suit against Alkire, claiming unjust enrichment and breach of contract. Alkire counterclaimed, and alleged breach of contract, unjust enrichment, and multiple violations of Ohio's Consumer Sales Practices Act. The matter proceeded to a two-day bench trial. During the trial, the court heard testimony from Alkire, Kohli, Rex Cockrell (a Sterling employee), Phyllis Kohli (Kohli's wife and Sterling employee), and Walter Morrow, an expert in matters related to the construction industry.

{¶ 7} The trial court found that neither party carried its burden, so that neither party was entitled to judgment on their claims/counter-claims. In so doing, the trial court found that the parties' relationship and informal transaction made the series of events a nontraditional consumer transaction not contemplated by the Consumer Sales Practices Act. The trial court also found that neither party was unjustly enriched, and that there was never a contract between the parties. Sterling now appeals the trial court's decision finding that a contract did not exist and that Alkire was not unjustly enriched, while Alkire appeals the trial court's decision finding that the Ohio Consumer Sales Practices Act did not apply.

{¶ 8} Alkire's Assignment of Error:

{¶ 9} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY FAILING TO APPLY THE CONSUMER SALES PRACTICES ACT BECAUSE OF A PURPORTED PERSONAL RELATIONSHIP BETWEEN THE PARTIES WHEN THE UNDERLYING TRANSACTION BETWEEN THE PLAINTIFF-APELLEE [SIC] AND DEFENDANT-APPELLANT INVOLVED A CONSUMER TRANSACTION COVERED BY THE ACT.

**{¶ 10}** Alkire argues in in his assignment of error that the trial court erred when it found that the Ohio Consumer Sales Practices Act (CSPA) does not apply to the relevant transaction between Sterling and Alkire.

**{¶ 11}** The CSPA is a remedial law, and must be liberally construed. *Shumaker v. Hamilton Chevrolet, Inc.*, 184 Ohio App.3d 326, 2009-Ohio-5263, ¶ 17(4th Dist.). It was "modeled after the Uniform Consumer Sales Practices Act, which provides policies for protecting consumers from suppliers who engage in deceptive and unconscionable sales practices, and also encourages the development of fair consumer sales practices." *Burdge v. Kerasotes Showplace Theatres, L.L.C.*, 12th Dist. Butler No. CA2006-02-023, 2006-Ohio-4560, ¶ 39. "Generally, the CSPA gives consumers standing to enforce its provisions even when they have not suffered actual injury from a violation." *Schumaker* at ¶ 17, citing R.C. 1345.09.

**{¶ 12}** The CSPA applies to consumer transactions. The statute defines "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A). The statute goes on to define a "supplier" as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." R.C. 1345.01(C). "'Consumer" means "a person who engages in a consumer transaction with a supplier." R.C. 1345.01(D).

**{¶ 13}** The CSPA provides that "no supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.02(A). The CSPA generally defines "'unfair or deceptive consumer

sales practices' as those that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, ¶ 10. A nonexhaustive list of practices defined as "unfair" or "deceptive" is contained in R.C. 1345.02(B). *Schneble v. Stark*, 12th Dist. Warren Nos. CA2011-06-063, CA2011-06-064, 2012-Ohio-3130, ¶ 47.

{¶ 14} This court has not found any support for the trial court's finding that the CSPA does not apply to situations where the consumer and supplier have a personal relationship or participate in an informal transaction. Instead, the parties to the transaction were Sterling Construction and Alkire. Sterling, which is in the business of providing construction services, agreed to provide and did provide construction services to Alkire for a fee. Therefore, Sterling is a supplier as that term is contemplated in the CSPA. Alikre agreed to pay Sterling to perform remodeling services, and paid Sterling $40,000 for those services. Therefore, Alkire is a consumer as set forth in the statute. The fact that Kohli and Alkire knew each other for over 30 years does not change Sterling's designation as a supplier and Alkire's designation as a consumer, nor does the relationship remove the transaction from the CSPA.

{¶ 15} There is no doubt that Kohli and Alkire proceeded informally and with marked familiarity with one another, but that does not remove the consumer transaction from the purview of the CSPA. While Alkire does not allege, and there is insufficient evidence to establish that, Sterling's remodeling efforts constituted an unfair or deceptive consumer sales practice, its practice regarding invoices, estimates, and receipts are issues addressed by the CSPA.

{¶ 16} As previously stated, the CSPA provides a nonexhaustive list of acts or practices defined as "unfair" or "deceptive." R.C. 1345.02. Additionally, "the Ohio Attorney General is charged with adopting rules and regulations to clarify which acts can be

automatically considered deceptive, unfair or unconscionable." *Shaver v. Std. Oil Co.*, 89 Ohio App.3d 52, 63 (6th Dist.1993); R.C. 1345.05. The Attorney General's Office keeps a record of acts that have been deemed deceptive, unfair, or unconscionable and a consumer who is subjected to such practices can seek special statutory damages. *Shaver* at 63.

{¶ 17} The Ohio Administrative Code sets forth deceptive practices, as those practices have been recognized by the Ohio Attorney General's Office. According to Ohio Adm.Code 109:4-3-05, not providing a customer with a written estimate, not obtaining written authorization from the consumer for increases over an estimate, and not providing receipts for payments constitute deceptive practices for which the consumer is entitled to damages. As previously stated, if the consumer is able to demonstrate violations of the CSPA, the consumer is entitled to damages according to R.C. 1345.09, as well as a possibility of attorney fees.

{¶ 18} The trial court did not address the applicability of these provisions as they relate to the facts of the case because the trial court determined that the CSPA did not apply. Having found that the CSPA does apply to this consumer transaction, the trial court shall apply the applicable provisions and determine what, if any, violations occurred and to what damages and reasonable attorney fees Alkire may be entitled.

{¶ 19} Having found that the trial court erred in finding that the CSPA is not applicable to the case sub judice, Alkire's assignment of error is sustained, and the matter is remanded for further proceedings.

{¶ 20} Sterling's Assignment of Error:

{¶ 21} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-CROSS-APPELLANT FINDING THAT THE DEFENDANT-CROSS-APPELLEE FAILED TO PROVE THAT THE PARTIES HAD NOT ENTERED INTO AN IMPLIED CONTRACT OR THAT THE DEFENDANT-CROSS-APPELLEE WAS NOT UNJUSTLY ENRICHED.

{¶ 22} Sterling argues in its assignment of error that the trial court erred by finding that that no contract existed, and that Alkire was not unjustly enriched.

{¶ 23} There are three classes of simple contracts: express, implied in fact, and implied in law. *JS Productions, Inc. v. G129, L.L.C.*, 12th Dist. Butler No. CA2011-02-029, 2011-Ohio-4715. "In express contracts the assent to its terms is actually expressed in offer and acceptance. In contract implied in fact the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which made it inferable that the contract exists as a matter of tacit understanding." *Id.* at ¶ 15.

> In its legal sense, the word "contract" includes every description of agreement or obligation, whether verbal or written, whereby one party becomes bound to another to pay a sum of money or to perform or omit to do a certain act. * * * To show a contract implied in fact, services must be rendered, work performed or materials furnished by one party for another under such circumstances that the party to be charged knew or should have known that the services were given with the expectation of being paid on the basis of their reasonable worth.

*Terex Corp. v. Grim Welding Co.*, 58 Ohio App.3d 80, 82 (9th Dist.1989).

{¶ 24} The record is undisputed that Alkire and Sterling did not enter into a written agreement regarding their consumer transaction. However, and despite the trial court's finding that no contract existed, the facts clearly indicate that the parties entered into an agreement that Sterling would perform construction services for Alkire and that Alkire would pay for such services.

{¶ 25} The trial court found that neither party established by a preponderance of the evidence that an implied contract existed because there were "no mutually agreed terms to enforce or clear and unambiguous terms to interpret." While the record is clear that there were no concrete estimates and that the parties would often make on-the-spot changes to construction plans and otherwise work off of general estimates for the work to be completed, the underlying agreement to provide services for payment was implied by fact.

- 7 -

{¶ 26} The facts clearly demonstrate that Sterling performed multiple services, some of which included adding a new roof, adding a porch, installing custom windows, adding a new soffit around the house, adding gables, installing security lights, installing a garage door, working on the electrical system, repairing the brick siding, and framing changes to the inside of the home. The work was performed over several months, and Alkire came on a daily basis to check Sterling's progress. For these services and more, Alkire paid sterling $40,000. The record indicates that Kohli and Alkire would have conversations about the remodeling almost on a daily basis and that Alkire was heavily involved in making decisions, checking the work performed by Sterling, and having interactions with Sterling employees during the time that Sterling worked on his home. These facts clearly indicate that services were rendered, work was performed and materials were furnished by Sterling to Alkire under such circumstances that Alkire knew or should have known that the services were given with the expectation of being paid on the basis of their reasonable worth. As such, there was a tacit understanding between the parties regarding the agreement for Sterling to provide remodeling services in exchange for Alkire's payment for those services.[2]

{¶ 27} Sterling demonstrated that the circumstances surrounding its transaction with Alkire make it reasonably certain that an agreement was intended. The parties demonstrated a tacit understanding that each was to perform according to the agreement. In this regard, Sterling performed by doing the work as discussed, and Alkire made multiple payments at different times totaling $40,000 to Sterling for the work it performed and the materials it provided.

{¶ 28} Given the trial court's determination that the no such contract existed, we reverse the decision of the trial court and remand for further proceedings. The trial court

---

2. For example, nothing in the record suggests that Alkire expected upgrades and adjustments to the work being performed to be tendered at no cost.

shall determine whether there was a breach of contract when Alkire refused to pay the amount invoiced by Sterling for services and materials it had provided.

{¶ 29} Having found that the parties had an implied contract, the unjust enrichment claim is no longer applicable. As this court has recently stated, "a party pursuing relief for breach of contract cannot at the same time seek equitable relief for unjust enrichment." *Ownerland Realty, Inc. v. Zhang*, 12th Dist. Warren Nos. CA2013-09-077, CA2013-10-097, 2014-Ohio-2585, ¶ 24. Therefore, we will not address Sterling's claim that Alkire was unjustly enriched, given that there was a valid implied contract in place.

{¶ 30} We understand and appreciate that the trial court was trying to reach a *fair* conclusion that accounted for the informal agreement between the two parties, and the longstanding relationship between Kohli and Alkire. However, there is no case law to support the conclusion that the consumer transaction is removed from the CSPA because of the familiarity between the parties. By the same token, however, the fact that there was familiarity between the two parties does not eliminate the fact that Alkire contracted with Sterling and had a duty to pay for services according to the implied contract.

{¶ 31} Judgment reversed and the matter is remanded for further proceedings consistent with this opinion.

RINGLAND, P.J., and S. POWELL, J., concur.