[Cite as *Baise v. Puckett*, 2024-Ohio-508.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

|  |  |  |
|---|---|---|
| TRAVIS BAISE dba T&T RESIDENTIAL CONSTRUCTION, | : | |
| | : | CASE NO. CA2023-05-008 |
| Appellee, | : | O P I N I O N |
| | : | 2/12/2024 |
| - vs - | : | |
| | : | |
| DAVID PUCKETT, et al., | : | |
| Appellants. | : | |

APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CVH 20210111

Hoover Law Firm, LLC, and Phillip D. Hoover, for appellee.

Miller, Westwood & Brush, LLP, and Michael B. Miller, for appellants.

**HENDRICKSON, P.J.**

{¶ 1} Defendants, David and Cantessa Puckett (the "Pucketts"), appeal the April 11, 2023 Judgment Entry and Decision of the Clinton County Court of Common Pleas in favor of Plaintiff, Travis Baise, dba T&T Residential Construction ("T&T").

**I. Factual Background**

{¶ 2} The facts of this case are relatively simple for the purposes of this appeal. In 2020, T&T went to the Pucketts' home to make a quote for roofing work. T&T provided

a written quote dated April 30, 2020 to install a new roof on the house and detached garage, to replace fascia, gutters and downspouts on the house and garage, and to replace a portion of siding on the garage. T&T provided a second written quote the same day for removing and replacing all fascia and "freeze metal" gutters on the house and for installing shutters and posts at the house. Each quote stated that 30% of the total would be paid up front and the final 70% paid upon completion. Additionally, each quote prominently contained an "Acceptance of Proposal" box, but neither were signed nor dated by the Pucketts. Nonetheless, the Pucketts paid T&T $6,815 on May 4, 2020. The receipt for that payment states it is for "30% prepayment on $22,717.00" for "Roof, Soffit, Gutters, Post." Notably, $22,717.00 is the sum of the costs provided in the two quotes.

{¶ 3} Upon beginning the work, T&T notified the Pucketts that the original shingle they had selected for the roof was not available. The Pucketts then selected a different shingle for their roof. After completing just the roof, T&T submitted a bill to the Pucketts for the balance due on the roof and six sheets of oriented strand board on Sept 2, 2020. The Pucketts took issue with the invoice for two reasons: the price did not match the quotes, and they believed that payment would not be due until all items on both quotes were completed. A dispute also developed as to whose responsibility it was to communicate with the Pucketts' insurance company to receive money for covered work.

{¶ 4} Communication between the parties subsequently broke down and the Pucketts told T&T to not return. Ultimately, the remainder of the work listed in the two quotes was not completed. The Pucketts later complained that they did not like the color of the shingles, that some shingles on the completed roof were lifting, that there was a rut in the yard, and that two shrubs were damaged from the work done by T&T. T&T received no money from the Pucketts other than the $6,815 paid on May 4, 2020.

- 2 -

## II. Procedural Posture

{¶ 5} T&T filed a complaint against the Pucketts setting forth three causes of action: (1) breach of contract; (2) money had and received; and (3) fraud. For the breach of contract claim, T&T alleged that it and the Pucketts "entered [into] a contract whereby [T&T] agreed to complete roof replacement for the sum of $22,717.00 * * * Per the parties' agreement, [the Pucketts] were to remit 30% of the sum as a downpayment and satisfy the remaining 70% upon completion of the roof, facia and gutter." T&T claimed the Pucketts breached their "written agreement" and sought $11,400 in compensatory damages for the completed work as well as compensatory and punitive damages for fraud, attorneys' fees, and costs.

{¶ 6} The Pucketts filed five counterclaims: (1) breach of contract; (2) Consumer Sales Practices Act ("CSPA") violations; (3) negligence; (4) promissory estoppel; and (5) unjust enrichment. The Pucketts sought compensatory damages, $5,000 in noneconomic damages, attorney fees for the CSPA violations, $50,000 in punitive damages, and costs.

{¶ 7} The matter proceeded to a bench trial on January 31, 2023. On April 11, 2023, the trial court issued its decision and ruled on several key issues that are relevant for this appeal: (1) the two quotes and the parties' actions operated as an implied contract, not an express one; (2) T&T "did partially perform the agreement and completed installation of the roof" and is entitled to recover for that work; (3) the cost of the roof totaled $16,257.00; (4) the Pucketts originally paid $6,815.00; and (5) there were no issues with the installation of the roof other than T&T damaged shrubbery at the home. The court awarded $9,442.00, plus court costs on T&T's breach of contract claim as well as $1,500 to the Pucketts on their negligence claim for the damaged shrubbery.

## III. Discussion

{¶ 8} The Pucketts now appeal and raise a single assignment of error for our

review:

**THE TRIAL COURT ERRED AND THE DECISION WAS AGAINST THE WEIGHT OF THE EVIDENCE TO FIND THAT A BREACH OF CONTRACT OCCURRED BASED ON THE CAUSES OF ACTION PLED BY PLAINTIFF.**

**{¶ 9}** The Pucketts contend the trial court's judgment was against the manifest weight of the evidence because T&T's complaint asserted a claim for breach of express contract and not for unjust enrichment, contract implied in fact, contract implied in law or quantum meriut. As a result, the Pucketts argue the trial court found something that T&T neither asserted nor gave notice in his pleadings as a pursued cause of action.

## A. Standard of Review

**{¶ 10}** A review of the manifest weight of the evidence is the same in criminal and civil cases. *Smith-Knabb v. Vesper*, 12th Dist. No. CA2022-06-044, 2023-Ohio-259, ¶ 16. A manifest weight of the evidence determination must examine "the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. During this examination, the appellate court will inspect the entire record but must keep in mind that because testimony and evidence were presented directly to a judge or jury, the trier of fact was in the best position to evaluate witness credibility and the weight of the evidence. *State v. Maloney*, 12th Dist. Butler No. CA2022-07-069, 2023-Ohio-2711; *Id.* at ¶ 14-15. Ultimately, a judgment will be overturned only where there has been "a manifest miscarriage of justice" and the evidence "weighs heavily in favor of" a different result. *Barnett*, 2012-Ohio-2372, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

## B. Applicable Law

**{¶ 11}** There are three types of contracts under Ohio law: (1) express contracts;

- 4 -

(2) implied in fact contracts; and (3) implied in law contracts. *Sterling Constr., Inc. v. Alkire*, 12th Dist. Madison No. CA2013-08-028, 2014-Ohio-2897, ¶ 23, citing *JS Productions, Inc. v. G129, L.L.C.*, 12th Dist. Butler No. CA2011-02-029, 2011-Ohio-4715, ¶ 15. To create an express contract, there must be an offer and acceptance of written terms. *Id.*

{¶ 12} With an implied in fact contract, however, a "meeting of the minds * * * is shown by the surrounding circumstances which made it inferable that the contract exists as a matter of tacit understanding." *Sterling Constr., Inc. v. Alkire*, 12th Dist. Madison No. CA2013-08-028, 2014-Ohio-2897, ¶ 23. Contracts implied in fact are often found where services and materials are provided by one party to another, "under such circumstances that the party to be charged knew or should have known that the services were given with the expectation of being paid on the basis of their reasonable worth." *Id.*, citing *Terex Corp. v. Grim Welding Co.*, 58 Ohio App.3d 80, 82, (9th Dist.1989).

{¶ 13} With an implied in law contract "there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain and for which he may be made to respond to another in an action in the nature of assumpsit." *JS Productions, Inc.*, 2011-Ohio-4715 at ¶ 15.

{¶ 14} Under Ohio Civ. R. 8(A), pleadings are required to contain "(1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." As a result, "a party is not required to plead operative facts with particularity" if sufficient notice of the claim to relief is given. *Conaway v. Mt. Orab*, 12th Dist. Brown No. CA2021-04-005, 2021-Ohio-4041, ¶ 18, citing *Adena at Miami Bluffs Condominium Owners' Assn., Inc. v. R. Hugh Woodward*, 12th Dist. Warren No. CA2020-08-044, 2021-Ohio-3872, ¶ 18.

{¶ 15} Stated differently, a complaint "must contain either direct allegations on

every material point necessary to sustain a recovery on any legal theory, 'or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" *Klan v. Med. Radiologists, Inc.*, 12th Dist. Warren No. CA2014-01-007, 2014-Ohio-2344, ¶ 13, quoting *Sexton v. Mason*, 12th Dist. Warren No. CA2006-02-026, 2007-Ohio-38, ¶ 25. To that effect, Ohio courts construe complaints liberally "to serve the substantive merits of the action" and "to do substantial justice." *State of Ohio ex. rel. Solid Rock Ministries Internatl., et al., v. City of Monroe*, 12th Dist. Warren No. CA2021-04-035, 2022-Ohio-431, ¶ 17, citing *MacDonald v. Bernard*, 1 Ohio St.3d 85, 86, fn. 1; Ohio Civ. R. 8(F).

## C. Analysis

**{¶ 16}** The trial court correctly found there was no express contract between the parties. The two April 30, 2020 quotes that were the subject of the trial were clearly not accepted by the Pucketts so as to create an express contract because the "Acceptance of Proposal" box in each was not signed and dated. Nonetheless, the parties agree that the Pucketts made a partial payment to T&T to begin work on the home and that T&T completed the roofing portion of the quotes and otherwise furnished materials to the Pucketts' home. At this point, the parties' actions implied that a contract between them existed, even if there was no express writing signed by each party.

**{¶ 17}** We disagree, however, with the trial court's conclusion that "it is clear that the parties did not have a meeting of the minds as to when payment was due." The parties agree that the Pucketts paid T&T $6,815.00 on May 4, 2020. The receipt for that payment states it is for "30% prepayment on $22,717.00" for "Roof, Soffit, Gutters, Post." As stated previously, $22,717.00 is the sum of the costs provided in the two quotes. In addition, each quote provided from T&T to the Pucketts stated that 30% would be put down with the remaining 70% paid upon completion. Thus, the surrounding

circumstances demonstrate it was the parties' tacit understanding that 30% would be prepaid for all projects encompassed by the two quotes, with the final 70% due after all work was completed.

{¶ 18} Nonetheless, we find no error in the trial court's award of $9,442.00 to T&T. On appeal, the Pucketts only challenge whether the trial court could find an implied contract existed between the parties. The Pucketts' appeal does not take issue with the trial court's findings that the Pucketts received a new roof, that the roof cost $9,442.00 more than what the Pucketts had already paid T&T, that it was installed in a workmanlike manner, or any other finding on the parties' causes of action. While T&T may have requested payment before it was entitled to it, and that dispute, in part, resulted in the cessation of T&T's work at the Pucketts' home, T&T is entitled to payment for the work it did complete because an implied contract existed between them.

{¶ 19} Additionally, we are unconvinced by the Pucketts' argument that T&T is prevented from recovering against them at trial because T&T did not specifically allege that they breached an implied contract. T&T's complaint alleged a "breach of contract." As discussed above, T&T was ultimately incorrect in its assertion that it had a written contract with the Pucketts. However, the complaint still clearly put the Pucketts on notice of the nature of the action and T&T's claim to relief of money damages for the roofing work completed in 2020. The record, and particularly the trial transcript, reflects that the parties understood that their claims and defenses turned on the quotes and the actions taken based off the quotes.

{¶ 20} In conclusion, the trial court's decision that the Pucketts should pay T&T for the work completed before their relationship broke down does not represent a manifest miscarriage of justice. Further, the trial court's decision construed T&T's complaint liberally, served the substantive merits of the action, and accomplished substantial justice

between the parties.

**{¶ 21}** Judgment affirmed.

PIPER and BYRNE, JJ., concur.